945 So.2d 898 (2006)
STATE of Louisiana, Appellee
v.
James BOUDREAUX, Appellant.
No. 41,660-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*899 C. Bryan Racer, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Cynthia P. Lavespere, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS, and DREW, JJ.
BROWN, Chief Judge.
Defendant, James Boudreaux, was charged by grand jury indictment with 14 counts of video voyeurism, violations of La. R.S. 14:283. Defendant pled guilty to all 14 counts in exchange for the state's agreement not to charge him as a habitual offender. The trial court sentenced the then 42-year-old defendant to four years imprisonment at hard labor without benefit of probation, parole or suspension of sentence on each count and ordered the sentences to be served consecutively, for a total term of 56 years imprisonment at hard labor without benefit. Defendant has appealed his sentence as excessive. Finding that this 56-year sentence is constitutionally excessive, we vacate the sentence and remand the matter for resentencing.

Facts
During the early part of 2005, the 18-year-old victim lived with defendant, who was her stepfather, in his mobile home in West Monroe. She had lived with him and her mother since she was 11 years old and chose to live with him and his son after her mother and defendant separated in April of 2003. The victim had her own bedroom and bathroom in the trailer. Unbeknownst to the victim, defendant had installed a Radio Shack 2.4 Ghz wireless camera in the entertainment center in the teenager's bedroom. Defendant connected the receiver for this camera to a video cassette recorder and for four months, he *900 videotaped the victim, sometimes while she was dressing and undressing and at times while she was completely nude.[1]
In April 2005, the victim knocked on the door and entered defendant's bedroom to give him some cigarettes she had picked up from the store for him. She saw her stepfather standing naked in front of his television. He hurriedly jumped under the covers of his bed and turned off the tape he had been watching, but not before the victim saw her bedroom on the screen. Later, when defendant was not home, she found videotapes in defendant's bedroom, the contents of which depicted her and several friends in various stages of undress. She then found the camera defendant had installed in her bedroom. The victim disconnected the video camera and confronted her stepfather. Defendant's response was that it was his trailer, and he could film whatever he wanted.
After being kicked out by defendant several months later, the victim contacted the sheriff's office to get assistance in retrieving her personal items from the trailer. She told police about the video camera and tapes and a search warrant for defendant's residence was obtained. During the search, defendant told an officer that the tapes and camera were locked in an outside storage building. Another search warrant for that building was obtained, and the tapes were recovered. A female deputy viewed the tapes, which depicted the victim with her breasts and/or pubic area exposed. Defendant was arrested on six counts of video voyeurism; however, a grand jury indicted defendant on 14 counts.
Defendant, who had a prior felony conviction for attempted possession of cocaine which occurred in 1992, pled guilty to all 14 counts without a sentencing agreement in exchange for the state's promise not to charge him as a habitual offender. The court conducted a sentencing hearing in March 2006, at which time it considered a pre-sentence investigation report and the testimony of several witnesses.
Ouachita Parish Sheriff's Office Sergeant Tammy Philley testified that she viewed the tapes taken from defendant's home and noted that there was a total of six different nude or partially nude young women shown on the tapes. Officer Philley said that during the course of the investigation, they found no evidence that defendant had threatened bodily harm to any of the victims or had tried to influence or coerce the victims into not prosecuting the case.
The court also heard testimony from Susan Wilson, who identified herself as a past victim of video voyeurism. Defendant objected to the admission of Ms. Wilson's testimony as an expert witness; this objection was overruled by the court after hearing Ms. Wilson's description of her experience as a victim and an activist in having video voyeurism made a criminal offense in Louisiana. Ms. Wilson described the severe psychological damage video voyeurism had caused her and attributed a variety of debilitating psychological conditions to the offense.
On behalf of defendant, Bruce Shelton, a superintendent who had supervised defendant at one of his jobs, testified that he had known defendant for 15-20 years and that defendant had a good work ethic, was dependable and well-liked. Shelton knew that defendant had a criminal record but was unfamiliar with the details. Another supervisor with a different employer, *901 Kenneth Harrell, described defendant as responsible, honest and hard-working.
Defendant's nephew, Winfred Boudreaux, II, testified that he had known his uncle for 35 years and opined that his uncle was a good man who had always helped him when he needed assistance. Defendant's brother, Michael Boudreaux, testified that he knew his brother well and described him as a "good-hearted guy."
Defendant testified on his own behalf at the sentencing hearing. He stated that he initially bought the video camera to keep track of who was in and out of his house while he was working out of town, but the situation "got out of hand." Defendant said that he was very sorry for what he had done, and attributed much of his conduct to a drug and alcohol problem. He testified that he was an alcoholic and was addicted to painkillers. His adult criminal record as reported in the PSI is as follows:

 05-03-80: Urinating in Public
 08-07-83: DWI, Second Offense
 06-03-84: Introduction of Contraband (marijuana)
 into Correctional Facility[2]
 08-25-89 Illegal Use of Weapons
 Simple Criminal Damage to
 Property
 12-19-89 Simple Battery
 12-22-90 Simple Battery
 Simple Criminal Damage to
 Property
 10-16-92 Attempted Possession of Cocaine
 09-01-99 DWI, First Offense

Finally, the victim made a brief statement and filed a written statement into the record. She stated that the offense had a devastating effect upon her, particularly in that she thought of defendant as a father. The victim related that she was afraid to be undressed in her home or to go to school and that she felt as though she could not trust anyone.
The court noted that the videotapes made by defendant each contained many segments showing the victim undressed and that other tapes showed at least six other young females in various stages of undress. The court also gave lengthy and thorough consideration of the facts in light of the factors set forth in La. C. Cr. P. art. 894.1. In deciding to impose consecutive rather than concurrent sentences, the court observed:
Defendant was afforded considerable leniency via no habitual offender [proceeding] being pursued and having only 14 counts charged. The evidence present and the strength of the case, the large and numerous counts of possible violations [sic]. Maximum sentences are appropriately imposed in cases involving the most serious violations of the described offenses for the worst offender. . . . Consecutive sentences may be imposed and may be justified when due to his or her past conduct or repeated offenses over an extended period of time and if the defendant poses an unusual risk of harm or safety to the public.
The court then noted that it found defendant's expressions of remorse to lack credibility. The court sentenced defendant to four years at hard labor on each count and ordered the sentences to run consecutively. The court also ordered defendant to pay a $2,500 fine, in default of which he was to serve nine months in jail or perform 400 hours of community service when released. Defendant filed a motion *902 to reconsider sentence, which was denied. This appeal ensued.

Discussion
Excessive Sentence
Louisiana Revised Statute 14:283(A) provides, in part, that:
A. Video voyeurism is:
(1) The use of any camera, videotape, photo-optical, photoelectric, or any other image recording device for the purpose of observing, viewing, photographing, filming, or videotaping a person where that person has not consented to the observing, viewing, photographing, filming, or videotaping and it is for a lewd or lascivious purpose.
. . . .
B. . . .
(3) Whoever commits the crime of video voyeurism when the observing, viewing, photographing, filming, or videotaping is of any vaginal or anal sexual intercourse, actual or simulated sexual intercourse, masturbation, any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva, or genitals shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than one year or more than five years, without benefit of parole, probation, or suspension of sentence.[3]
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, writ denied, 00-1572 (La.03/23/01), 787 So.2d 1010; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988).
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Mitchell, 37,916 (La. *903 App.2d Cir.03/03/04), 869 So.2d 276, writ denied, 04-0797 (La.09/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005); State v. Maxie, 30,877 (La.App.2d Cir.08/19/98), 719 So.2d 104.
Among the factors to be considered are the defendant's criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir. 1986), writ denied, 496 So.2d 355 (La. 1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir. 1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La. 1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987); and whether defendant has received a benefit from a plea bargain, State v. Jett, supra; State v. Adams, supra. See also State v. Maxie, supra.
The jurisprudence cited in State v. Hampton, 38,017 (La.App.2d Cir.01/28/04), 865 So.2d 284, writ denied, State ex rel. Hampton v. State, 04-0834 (La.03/11/05), 896 So.2d 57, writ denied, State ex rel. Hargrove v. State, 04-2380 (La.06/03/05), 903 So.2d 452, concludes that the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences.
In attacking his consecutive hard labor sentences as excessive, defendant points out that La. R.S. 14:283, the video voyeurism statute, in paragraph B(4), recognizes that the worst offenders are those who commit the crime against children and because his victim was not a minor, he is not the worst type of offender. He claims that the offense of video voyeurism is not a rape or sexual assault and in many cases such severe sexual offenders (rapists and child molesters) receive substantially smaller sentences than the one imposed in his case.[4]
Defendant was 42 years old at the time of sentencing. His criminal history consists primarily of drug and alcohol related offenses. In fact, his conviction in 1984 of bringing marijuana into a correctional facility occurred while he was serving time on the weekends for DWI. Defendant's last violent offense was a conviction for simple battery in 1990, which arose out of an argument with his sister.
Any sentence for video voyeurism under La. R.S. 14:283 B(3) must be served without benefit of parole, probation, or suspension of sentence. As a practical matter, 14 four-year terms without benefit of parole to be served consecutively is a life sentence. Even as a second felony offender, defendant would have been subject to a fixed term.
Although defendant's video voyeurism does not involve any physical contact or violence, it is nonetheless a reprehensible violation of a personal nature. At 18 years old, the victim may not legally have been a minor, but she was a young and callow girl. Defendant perpetrated the crime against someone he had essentially raised as a daughter. According to the victim, her mother and defendant began dating when she was eight years old and married *904 when she was eleven. After the parties separated in April of 2003, the victim lived with her mother for approximately four months then moved in with defendant. She lived with defendant and defendant's son until June 2005 when defendant ordered her to leave.
The experience has had and undoubtedly will continue to have a significant effect on the victim. However, defendant's activities all formed a part of a single scheme or plan, something that the trial court did not adequately address at sentencing. While it is within the trial court's discretion to impose sentences consecutively in an appropriate "scheme or plan" case, in the instant matter, the imposition of a 56-year term without parole is out of proportion to the offense and appears to impose a purposeless and needless infliction of pain and suffering.
Louisiana Code of Criminal Procedure article 881.4(A) provides:
If the appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentencing by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose.
The trial court should reevaluate and address which of these counts represent a separate and distinct crime and impose consecutive and concurrent terms in a more appropriate fashion.

Admissibility of Susan Wilson's Testimony
Defendant's last assignment of error is that the trial court should not have heard testimony from Susan Wilson, a victim of video voyeurism, under the auspices of receiving expert testimony.[5]
This was a sentencing hearing, not a trial, and the court stated that it was not giving Ms. Wilson's testimony any more weight than the testimony of any other witness. The court observed that Ms. Wilson's testimony about the effect of video voyeurism upon her was cumulative of what the victim in the instant case reported as the effect that defendant's video voyeurism had upon her. We agree. Ms. Wilson's testimony simply supported the victim's statement and was an expression of how she felt after experiencing a similar despicable intrusion on her privacy.

Conclusion
For the reasons set forth above, defendant's sentence is vacated and the matter is remanded to the trial court for resentencing.
NOTES
[1] Other tapes allegedly showed some of the victim's young female friends partially or completely naked and one tape purportedly depicted defendant masturbating while holding a pair of the victim's underpants up to his face.
[2] A sentence imposed for a violation of this offense, La. R.S. 14:402 (up to five years imprisonment), does not necessarily have to be served at hard labor, so it is classified as a "relative felony." Defendant was sentenced to 90 days in the parish jail upon conviction. An offense's status as a relative felony does not prevent it from being considered as a prior felony for habitual offender purposes; however, the cleansing period for its use as a predicate offense in this case had elapsed. See State v. Burns, 29,632 (La.App.2d Cir.09/24/97), 699 So.2d 1179, reversed on PCR on other grounds and remanded for new trial, 35,267 (La.App.2d Cir.10/31/01), 800 So.2d 106.
[3] The victim in this case was 18 years old; if she had been 16 years old, La. R.S. 14:283(B)(4) provides:

(4) Whoever commits the crime of video voyeurism when the observing, viewing, photographing, filming, or videotaping is of any child under the age of seventeen with the intention of arousing or gratifying the sexual desires of the offender shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years without benefit of parole, probation, or suspension of sentence.
[4] We note that if this case had proceeded to trial a significant issue would have been how to distinguish the 14 separate counts. In this case, however, the 14 counts were agreed to by defendant when he pled guilty.
[5] Louisiana Code of Evidence article 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as a expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The standard for accepting expert testimony was set forth in State v. Foret, 628 So.2d 1116 (La.1993), wherein the Louisiana Supreme Court adopted the test set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).