GASKINS, J.
 

 | After a jury trial, the defendant, A.V. Barnett, was convicted of one count of second degree murder and one count of attempted second degree murder. He was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the conviction of second degree murder and 50 years at hard labor without benefit of probation, parole or suspension of sentence for the conviction of attempted second degree murder. The trial court ordered the sentences to run consecutively. The defendant now appeals. We affirm the defendant’s convictions and sentences.
 

 FACTS
 

 The victims, Herman “Little Cool” White and Richard Eligah, were brothers who lived together in a mobile home on Wimberly Road in Oak Ridge, Louisiana. As Mr. White is paralyzed from the chest down, his brother assisted him in daily living. There were allegations that they sold crack cocaine.
 

 On the night of May 20, 2006, into the early hours of May 21, 2006, the defendant was present at the brothers’ mobile home. Mr. White was in his bedroom, which was on the northern end of the mobile home, on the opposite end of the mobile home from his brother’s bedroom. The defendant attempted to buy crack cocaine from Mr. White, but Mr. White told him he did not have any to sell. Because the defendant was so insistent, Mr. White told him to leave his home. The defendant left the home at approximately 4:00 a.m.
 

 | ¡About three hours later, the defendant returned to the trailer. Mr. White was sleeping on his stomach, and awoke when the defendant stabbed him in the right shoulder. Mr. White asked what was going on, and the defendant demanded dope and money. Mr. White told him he did not have any dope or money, and grabbed a stick he had beside the bed which he used to keep the defendant at bay. He also pounded the stick on the floor of the trailer, which was his signal to his brother that he needed help. In the past, his brother would always come to his aid when he pounded on the floor; however, he did not respond this time.
 

 Mr. White gave the defendant a vial with three rocks of crack in it. The defendant pushed Mr. White’s wheelchair away from his bed. He left Mr. White’s room for a very short period of time. He returned and demanded money again. When Mr. White told him he did not have any money, the defendant stated, “Well, I got to go on and do what I gotta do.” The defendant picked up a sheet from a pile of clothes in the corner and set it on fire. He then left the trailer.
 

 Mr. White managed to pull himself out of bed and crawled into the living room. He called to his brother to get out of the house, yelling that the defendant had stabbed him and set the house on fire. Mr. White heard Mr. Eligah reply, “I can’t, I can’t.” Mr. White was able to drag himself out of the front door of the trailer and down the’wheelchair ramp as the trailer was engulfed in flames.
 

 The first person to arrive at the scene of the fire was Rodney Seay. He saw Mr. White in the road and asked him what had happened. Mr. |3White told him, “A.V. Barnett killed Richard, and he stabbed me. Richard in the house, and he dead.” Mr. White asked Mr. Seay to stay with him
 
 *3
 
 because he was afraid the defendant would return.
 

 At about that point, Jimmy Jones saw the smoke and drove to the trailer. On his way there, he noticed a man walking near the trailer, looking back toward the smoke. Mr. Jones noticed that when he drove by him, the man turned his face away from the road.
 
 [1]
 
 When Mr. Jones arrived at the mobile home, he saw Mr. White in the middle of the road. Mr. White told him that the defendant “done stabbed me and killed Richard.” Mr. White indicated that his brother was still inside the burning trailer; however, the fire was too hot for anyone to attempt to enter. Mr. Seay, who had stayed with Mr. White, asked Mr. Jones to remain with him while Mr. Seay flagged down another motorist and asked him to call the police and get an ambulance to the scene.
 

 The defendant’s cousin, Willie Johnson, was at home when he observed the defendant walking down the road in front of his house; the defendant was walking away from Mr. White’s home. The defendant asked Mr. Johnson for a ride to a friend’s house; Mr. Johnson agreed but said that first he needed to go down to Mr. White’s house to ask for help getting his truck out of a ditch. The defendant said he did not want to go there because there was a big fire, and there would be police, an ambulance and paramedics there.
 

 14The defendant got in the car with Mr. Johnson, and they drove down to Mr. White’s home. Mr. Johnson got out of the car when he saw Mr. White sitting in the road; he noticed that the defendant appeared panicked or seared. Mr. White told Mr. Johnson that the defendant stabbed him and set the trailer on fire, and that Richard was still inside. Mr. Johnson got back in the car and drove the defendant back to Mr. Johnson’s house. He refused to drive him to the friend’s house, even though the defendant offered him three rocks of crack in a small bottle if he would take him.
 

 A short time later, in response to the 911 call, Mike Barham of the Morehouse Parish sheriffs office arrived at the burning trailer and saw Mr. White sitting on the ground. Mr. White told Officer Bar-ham what the defendant had done, and that he had just left in Mr. Johnson’s car. Officer Barham went directly to Mr. Johnson’s house. The defendant was arrested and transported to the sheriffs office.
 

 The defendant was charged with the second degree murder of Mr. Eligah, whose charred body was subsequently found in the ruins of the mobile home, and the attempted second degree murder of Mr. White, who survived the stabbing and the fire. A total of five knives were recovered from the remains of the trailer— three in the kitchen area and one knife in each end of the mobile home where the brothers’ respective bedrooms were located. Mr. Eligah’s body was so badly burned that the cause of death could not be determined; however, the medical examiner was able to ascertain that he inhaled smoke and soot before he died.
 

 IsTrial was held in March 2010. The defendant testified, denying any involvement in the crimes and stating that he heard the brothers arguing with an unknown man. The jury convicted the defendant as charged of both offenses by votes of 10 to 2.
 

 In July 2010, the trial court imposed upon the defendant the mandatory sen
 
 *4
 
 tence of life imprisonment without benefit of probation, parole or suspension of sentence for the second degree murder conviction. After reviewing a presentence investigative (PSI) report and the factors set forth in La. C. Cr. P. art. 894.1, the trial judge sentenced the defendant to 50 years in prison at hard labor without benefits for the attempted second degree murder conviction. The trial court ordered that the sentences run consecutively. The judge also ordered the defendant to make restitution to Mr. White in the amount of $15,000 for the loss of the mobile home. While the defendant orally objected to the court’s ruling at the conclusion of sentencing, he did not make or file a motion to reconsider sentence.
 

 The defendant appealed his convictions and sentences, asserting two assignments of error.
 

 NONUNANIMOUS JURY VERDICT
 

 The defendant argues that the application of La. C. Cr. P. art. 782, which allows a nonunanimous jury verdict in hard labor cases, is unconstitutional and violates his Sixth Amendment right to a fair trial. In support of that argument, the defendant asserts that Louisiana and Oregon are the only states which have provisions which allow for nonunanimous guilty verdicts.
 

 |ñLa. C. Cr. P. art. 782 provides for the number of jurors composing a jury, and the number which must concur in rendering the verdict. In pertinent part, it states:
 

 A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict....
 

 Both second degree murder and attempted second degree murder are offenses for which “punishment is necessarily confinement at hard labor.” See La. R.S. 14:30.1 and La. R.S, 14:27.
 

 The Louisiana Supreme Court has consistently upheld the constitutionality of La. C. Cr. P. art. 782(A).
 
 State v. Bertrand,
 
 2008-2215 (La.3/17/09), 6 So.3d 738;
 
 State v. Edwards,
 
 420 So.2d 663 (La.1982);
 
 State v. Simmons,
 
 414 So.2d 705 (La.1982);
 
 State v. Jones,
 
 381 So.2d 416 (La.1980). Additionally, as explained in
 
 State v. Bertrand, swpra,
 
 the decisions of the United States Supreme Court have indicated that the constitutionality of nonunanimous jury verdicts is well settled.
 

 Claims such as that made by this defendant have been repeatedly rejected by this court.
 
 State v. Johnson,
 
 45,828 (La.App.2d Cir.1/26/11), 57 So.3d 1087;
 
 State v. Winslow,
 
 45,414 (La.App.2d Cir.12/15/10), 55 So.3d 910;
 
 State v. Blow,
 
 45,415 (La.App.2d Cir.8/11/10), 46 So.3d 735,
 
 writ denied,
 
 2010-2093 (La.2/11/11), 56 So.3d 1000;
 
 State v. Malone,
 
 43,548 (La.App.2d Cir.11/19/08), 998 So.2d 322,
 
 writ denied,
 
 2009-0198 (La.10/30/09), 21 So.3d 275;
 
 State v. Divers,
 
 38, 524 (La.App.2d Cir.11/23/04), 889 So.2d 335,
 
 writ denied,
 
 2004-3186 (La.4/8/05), 899 So.2d 2,
 
 cert. denied,
 
 546 U.S. 939, 126 S.Ct. 431, 163 L.Ed.2d 327 (2005).
 

 This assignment of error lacks merit.
 

 EXCESSIVE SENTENCE
 

 In this assignment of error, the defendant contends that the 50-year sentence for attempted second degree murder and the consecutive imposition of the sentences were excessive since he also received a mandatory sentence of life imprisonment for second degree murder.
 

 No motion to reconsider sentence was made or filed in the instant case. When a
 
 *5
 
 defendant fails to timely file a motion to reconsider sentence under La.. C. Cr. P. art. 881.1, the appellate court’s review is limited to the bare claim of constitutional excessiveness.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1998);
 
 State v. Richie,
 
 44,783 (La.App.2d Cir.10/28/09), 25 So.Sd 879,
 
 writ denied,
 
 2009-2492 (La.4/30/10), 34 So.3d 280.
 

 A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals.
 
 State v. Guzman,
 
 1999-1753, 1999-1528 (La.5/16/00), 769 So.2d 1158. The trial court has wide discretion in the imposition of sentences -within the statutory limits and such sentences Isshould not be set aside as excessive in the absence of a manifest abuse of that discretion.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7.
 

 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory.
 
 State v. Derry,
 
 516 So.2d 1284 (La.App. 2d Cir.1987),
 
 writ denied,
 
 521 So.2d 1168 (La. 1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Johnson,
 
 42,323 (La.App.2d Cir.8/15/07), 962 So.2d 1126.
 

 A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.
 
 State v. Johnson, supra; State v. Boudreaux,
 
 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898,
 
 writ denied,
 
 2007-0058 (La.11/2/07), 966 So.2d 591. Among the factors to be considered are the defendant’s criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the harm done to the victims; whether the defendant constitutes an unusual risk of danger to the public; the potential for the defendant’s rehabilitation; and whether the defendant has received a benefit from a plea bargain.
 
 State v. Johnson, supra; State v. Boudreaux, supra; State v. Jones,
 
 43,-053 (La.App.2d Cir.2/20/08), 982 So.2d 105,
 
 writ denied,
 
 2008-0710 (La.10/10/08), 993 So.2d 1282.
 

 In imposing sentence, the trial court considered the guidelines set forth in La. C. Cr. P. art. 894.1. It found numerous aggravating factors to be applicable to the defendant’s case but no mitigating factors. The trial court noted that the present convictions were not the defendant’s first. He had a previous conviction for simple rape, for which he was sentenced to 15 years at hard labor. He was released on parole after seven years, only to have his parole revoked on two occasions. The trial court described the defendant’s actions as particularly egregious and stated that the defendant’s actions showed that he is the worst type of offender.
 

 The defendant committed two heinous crimes, killing one man, and attempting to kill a paralyzed man by stabbing him, pushing his wheelchair out of reach, and setting his home on fire. The
 
 only
 
 reason
 
 *6
 
 the paralyzed and wounded victim survived was due to his own tenacity in dragging himself out of the burning building. The imposition of the 50-year sentence for the attempted second degree murder of this victim, to be served consecutively to the life sentence, is not unconstitutionally excessive, and an adequate factual basis for the imposition of consecutive sentences is fully supported by the evidence and the record. The sentence is not grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. When the crime [inand punishment are viewed in light of the harm done to society, the sentence does not shock the sense of justice.
 

 This assignment of error is without merit.
 

 CONCLUSION
 

 The defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . While Mr. Jones did not see the man’s face, the defendant later testified that Mr. Jones passed him on the road.