STEPHENS, J.
This criminal appeal by Paul Lynn Minnieweather arises from the Fourth Judicial District Court, Parish of Morehouse, *586 State of Louisiana. Minnieweather pled guilty as charged to two counts of attempted second degree murder, violations of La. R.S. 14:30.1 and La. R.S. 14:27. On each count, he was sentenced to 50 years at hard labor, without benefit of probation, parole, or suspension of sentence, to run concurrently and with credit for time served. Minnieweather now appeals his sentences. For the following reasons, we affirm his convictions and sentences.
FACTS
Minnieweather was indicted by a grand jury on two counts of attempted second degree murder, in violation of La. R.S. 14:30.1 and La. R.S. 14:27. The indictment shows that Minnieweather was charged with attempting to kill Sherquarius Moore and Kenneth Brown on March 13, 2016. After the original indictments were made, Kenneth Brown died from the injuries sustained during the shooting.
Minnieweather appeared before the trial court and accepted the state's plea offer as follows. In exchange for Minnieweather's plea of guilty as charged on both counts, the state agreed not to upgrade the offense regarding Kenneth Brown to second degree murder. Additionally, the state recommended that the sentences be imposed to run concurrently. The sentences were otherwise left to the discretion of the trial court and Minnieweather was informed that the sentencing range was 10-50 years at hard labor, without benefit of probation, parole, or suspension of sentence.
The state provided the following factual basis for the plea. The victims, Moore and Brown, were married, but according to Minnieweather, he and Moore had an ongoing relationship. On March 13, 2016, Minnieweather approached the couple on a residential street in Bastrop, Louisiana. Brown was seated in his vehicle and Moore was nearby. Minnieweather shot Moore and Brown multiple times at close range. Moore survived the shooting and was able to identify Minnieweather as the shooter. Brown suffered two gunshot wounds to the neck, which rendered him a quadriplegic and left him unable to communicate.[1] Minnieweather turned himself in to police and gave a voluntary statement admitting that he shot both victims. Minnieweather gave officers the murder weapon, and the state's ballistic testing matched the gun to the shootings.
Minnieweather confirmed to the trial court that he committed both shootings. Minnieweather stated that he had been in a relationship with Moore for four years, and he was hurt when he found Moore with Brown. Minnieweather admitted he shot the victims with a .40 caliber Smith and Wesson.
The trial court advised Minnieweather of his right to a jury trial and his right to confront and cross-examine his accusers. The trial court also advised Minnieweather he had a right to appeal his sentence. Minnieweather told the trial court he had an 18-year-old child; he had no prior felony convictions; and, he had previously been employed. The trial court found Minnieweather guilty of both counts of attempted second degree murder and ordered a presentence investigation ("PSI") report.
Minnieweather appeared for sentencing at a subsequent sentencing hearing. His trial counsel informed the trial court that after review of the PSI report, there were no objections. The trial court found *587 that Minnieweather's criminal history, which included misdemeanor convictions for criminal damage to property and disturbing the peace by fighting, along with various arrests, was not particularly significant. The trial court observed that Minnieweather had no history of violence similar to the current offenses. However, the trial court found it significant in this case that Minnieweather shot two people and one of them died almost a year later as a result. The trial court stated that because Kenneth Brown's life was "irreparably altered as a result of the shooting" and he subsequently died, the trial court considered Minnieweather's action as "closer to a murder." The trial court noted that, as a result of the shooting, Brown had to live in assisted living until his death. The trial court observed that if Brown had not died or "had not been so grievously injured to the point that it permanently altered his life," the court's attitude regarding sentencing would not have found it needed to be "a more egregious or oppressive end of the sentence." The trial court also noted that Minnieweather shot Moore, his alleged girlfriend, eight times, and found that "apparently he meant to do it."
The trial court recognized that the applicable sentencing range was 10-50 years at hard labor, without benefit of probation, parole, or suspension of sentence. Minnieweather then apologized to the trial court for his actions. The trial court noted its review of the PSI and sentenced Minnieweather on each count of attempted second degree murder to 50 years at hard labor, without benefit of probation, parole, or suspension of sentence. The sentences were imposed to run concurrently. Minnieweather was given credit for time served and advised that he had two years from the finality of his convictions and sentences to seek post-conviction relief. Pending charges in a separate case were dismissed.
Minnieweather filed a timely motion to reconsider sentence and asserted that the trial court erred in considering Brown's death a factor in sentencing, because there was no evidence that Brown's death was caused by the gunshot wounds inflicted by Minnieweather. Minnieweather also complained that the trial court failed to adequately consider as mitigating facts that this was his first felony, he turned himself in, and he cooperated with law enforcement. Additionally, Minnieweather argued that the trial court did not sufficiently articulate the mitigating and aggravating circumstances considered for the record. Finally, Minnieweather asserted that he should have received a sentence similar to those persons convicted of manslaughter. The trial court denied the motion, and this appeal ensued.
DISCUSSION
Minnieweather brings only one assignment of error, arguing that the maximum and concurrent 50-year sentences imposed on each count are excessive under the circumstances of the case, and the trial court abused its discretion in sentencing. Specifically, he maintains the trial court found he was not a danger to the community, and he did not have a significant criminal history, yet it still sentenced him to the maximum sentence. Minnieweather also contends that the trial court did not adequately consider that he turned himself in, cooperated with law enforcement, and was remorseful. Minnieweather asserts the trial court was too focused on Brown's injuries and the fact that he eventually died. We disagree.
As stated, Minnieweather was convicted of two counts of attempted second degree murder for the shooting of Moore and Brown multiple times with a firearm, with the specific intent to kill them.
*588 La. R.S. 14:30.1 ; La. R.S. 14:27. Whoever commits the crime of second degree murder is subject to a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Whoever attempts an offense punishable by life imprisonment shall be imprisoned at hard labor for not less than 10, nor more than 50 years without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27(D)(1)(a).
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. McGuire , 50,074 (La. App. 2 Cir. 9/30/15), 179 So.3d 632. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Christopher , 50,943 (La. App. 2 Cir. 11/16/16), 209 So.3d 255, writ denied , 2016-2187 (La. 9/6/17), 224 So.3d 985. The defendant's personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matter over other matters. State v. Moton , 46,607 (La. App. 2 Cir. 9/21/11), 73 So.3d 503, writ denied , 2011-2288 (La. 3/30/12), 85 So.3d 113.
Maximum sentences are generally reserved for the worst offenses and offenders. State v. Modisette , 50,846 (La. 9/28/16), 207 So.3d 1108. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. State v. Modique , 50,413 (La. App. 2 Cir. 1/27/16), 186 So.3d 283, writ denied , 2016-0464 (La. 3/13/17), 216 So.3d 801 ; State v. Black , 28,100 (La. App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied , 1996-0836 (La. 9/20/96), 679 So.2d 430. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. Id. Further, a trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Bass , 51,411 (La. App. 2 Cir. 6/21/17), 223 So.3d 1242, writ not cons. , 2018-0296 (La. 4/16/18), 239 So.3d 830. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Bass, supra .
A sentence can be constitutionally excessive, even when it falls within statutory guidelines, if (1) the punishment is so grossly disproportionate to the severity of the crime that when viewed in light of the harm done to society, it shocks the sense of justice; or, (2) it serves no purpose other than to needlessly inflict pain and suffering. State v. Lobato , 603 So.2d 739 (La. 1992) ; State v. Fatheree , 46,686 (La. App. 2 Cir. 11/2/11), 77 So.3d 1047.
Finally, when two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory; the trial court has discretion to run the sentences consecutively.
*589 State v. Barnett , 46,303 (La. App. 2 Cir. 5/18/11), 70 So.3d 1, writ denied , 2011-1612 (La. 4/13/12), 85 So.3d 1239.
In this case, Minnieweather's imposed sentences fall within the statutory guidelines of 10-50 years. The trial court sentenced Minnieweather in conformity with the plea agreement, in which Minnieweather was informed that he was subject to a maximum sentence exposure of 50 years at hard labor without benefits, and with concurrent sentences. Minnieweather gained a substantial benefit in sentencing when he voluntarily pled guilty on both counts to avoid a potential life sentence and to receive concurrent sentences rather than consecutive sentences.
While the trial court's review of Minnieweather's personal information was minimal, the information was included in the PSI report, which the trial court stated had been reviewed prior to sentencing. The trial court's recognition of mitigating factors is found in its comments that Minnieweather did not have a significant history of criminal convictions or acts of violence, which led the trial court to conclude that Minnieweather was not a recurring danger to society and would not likely repeat his behavior.
Minnieweather's concurrent maximum sentences are supported by the factual basis provided by the state and agreed to by Minnieweather. Minnieweather's only explanation for his attempt to murder these two people was that he was "hurt" in finding them together. Without any warning or mercy, Minnieweather shot Moore and Brown multiple times, leaving Brown to suffer in a severely debilitated state for 12 months until he finally succumbed to his wounds. In light of these facts and considering the substantial reduction in sentencing exposure and the imposition of concurrent sentences, the maximum penalty assessed here for Minnieweather's actions does not shock the sense of justice and is not disproportionate to the harm caused these two victims. Minnieweather fails to show that the trial court abused its discretion or that that sentences imposed were constitutionally excessive.
Minnieweather argues that he was sentenced under an assumption or premise held by the trial court that all persons convicted of attempted second degree murder should receive the maximum sentence. However, this assertion is unsupported by the record. Review of the sentencing transcript reflects that the trial court was considering what circumstances would lead the court to impose a sentence less than the maximum for attempted second degree murder. In fact, the trial court characterized its musings as "a verbal handwringing." The trial court observed that Minnieweather's history did not suggest an automatic maximum sentence; however, the trial court concluded that given the severity of the harm Minnieweather inflicted on these victims, concurrent maximum sentences were warranted. Such a conclusion was certainly within the trial court's discretion. Minnieweather shot his victims multiple times. He obviously intended their deaths, and feeling "hurt" surely does not justify or lessen his motivation. The trial court's emphasis on the outcome for the victims, i.e. , Brown's quadriplegia and subsequent death and Moore being shot "a number of times," are not unreasonable considerations in sentencing this defendant. As related by Brown's mother and seen in the PSI, Brown suffered greatly before he died: "He couldn't drink, couldn't eat, and couldn't do anything for himself. He had to have constant care .... He went from [working fulltime] to being hooked up to machines constantly .... The bullet in his neck shattered his vertebrae." Further, the record does not indicate that the trial court had any preconceived notions regarding Minnieweather's *590 sentence, but considered the facts of his particular crime, which facts certainly support a maximum sentence.
Finally, we note that prior to taking Minnieweather's guilty plea, the trial court did not advise Minnieweather of his right against self-incrimination, as required pursuant to Boykin v. Alabama , 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969) and La. C. Cr. P. art. 556.1. A guilty plea is not considered free and voluntary unless, at a minimum, the defendant is advised of his constitutional right against self-incrimination, his right to a trial by jury, and his right to confront his accusers. Boykin v. Alabama, supra; State v. Guzman, 1999-1753 (La. 5/16/00), 769 So.2d 1158 ; State v. Kennedy , 42,850 (La. App. 2 Cir. 1/9/08), 974 So.2d 203. An express waiver of these three constitutional rights must be made and a waiver cannot be presumed. State v. Russell , 46,426 (La. App. 2 Cir. 8/17/11), 73 So.3d 991, writ denied , 2011-2020 (La. 2/10/12), 82 So.3d 270 ; State v. Gay , 48,832 (La. App. 2 Cir. 2/26/14), 136 So.3d 919, writ denied , 2014-0605 (La. 10/24/14), 151 So.3d 600. While no specific articulation of the defendant's rights is required, the core concept of the rights must be conveyed. Id.
The trial court has a duty to advise the defendant of these constitutional rights and other rights, which are listed in La. C. Cr. P. art. 556.1, prior to accepting a guilty plea. However, deficiencies in the plea colloquy requirements specified by La. C. Cr. P. art. 556.1 are not subject to error patent review, and absent a defense assignment of error, the trial court's failure to inform the defendant of his rights is not reviewable on appeal. La. C. Cr. P. art. 920 ; State v. Robinson , 2006-1406 (La. 12/8/06), 943 So.2d 371. Furthermore, the courts have recognized that a defendant may wish to retain the benefits of a plea agreement and therefore not challenge a defect in the Boykin plea colloquy. See State v. Jones , 1999-2207 (La. 1/29/01), 778 So.2d 1131 ; State v. Reynolds , 1998-2281 (La. 4/16/99), 733 So.2d 1191.
Because the record is void of any evidence that Minnieweather was informed of, and waived, his constitutional right against self-incrimination, Minnieweather's guilty is plea is constitutionally invalid. However, neither Minnieweather nor his appellate attorney raised this defect on appeal and we conclude that Minnieweather does not wish to disturb the benefits of his plea agreement.
CONCLUSION
Thus, for the foregoing reasons, the convictions and sentences of Paul Lynn Minnieweather are affirmed.
AFFIRMED.

Brown remained incapacitated and institutionalized until his subsequent death in March 2017. According to the state, the autopsy report concluded that Brown's death was caused by the two gunshot wounds, because those wounds fractured Brown's spinal cord and left him a quadriplegic, leading to pneumonia and sepsis, then his death.