Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,777-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KIMBERLY SHAWNEE                            Appellant
JOHNSON

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 378,293

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

KIMBERLY SHAWNEE JOHNSON               Pro Se

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

MARGARET E. RICHIE GASKINS
KENDRA S. JOSEPH
JASON WAYNE WALTMAN
Assistant District Attorneys

* * * * *

Before STONE, HUNTER, and MARCOTTE, JJ.

HUNTER, J., concurring in part and dissenting in part.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Donald E. Hathaway, Jr. presiding. A unanimous jury convicted the defendant, Kimberly Shawnee Johnson, of the second degree murder of Lemel Taylor and obstruction of justice. The trial court sentenced the defendant to life imprisonment at hard labor without benefits for the second degree murder and 20 years at hard labor for obstruction of justice, to be served consecutively. On appeal, the defendant asserts that the trial court erred by imposing an excessive sentence. For the reasons set forth below, we affirm the defendant's sentences.

### FACTS AND PROCEDURAL HISTORY

On the morning of September 3, 2020, both the Shreveport Fire Department ("SFD") and the Shreveport Police Department ("SPD") were dispatched to a home on Southern Avenue. Upon arrival, Clinton Jones ("EMT Jones"), an SFD EMT, discovered the victim, Lemel Taylor ("Mr. Taylor"), deceased on the sofa with an apparent stab wound to his chest. Upon examination of Mr. Taylor's body, EMT Jones noticed that his jaw was stiff and rigor mortis had set in, indicating Mr. Taylor had been deceased for several hours. EMT Jones advised SPD Officer Cody Gebele ("Ofc. Gebele") that Mr. Taylor's death may be a possible homicide. As a result, Ofc. Gebele took on-scene witness reports from the defendant and her adult daughter, Shanequia Johnson ("Shanequia"). Shanequia stated that she came home around 7:15 a.m. and found her father on the sofa, bloody and unresponsive. During her statement to Ofc. Gebele, the defendant stated that she was the victim's girlfriend. She then explained that she came home to

the residence she shared with Mr. Taylor and her children at approximately 1:40 a.m., entered their home through the side door, and went straight to bed. The defendant claimed that she was unaware of anyone else in the home and could not provide Ofc. Gebele with any information as to how Mr. Taylor died.

SPD Detective Kenneth Thompson ("Det. Thompson") arrived at the scene and observed the defendant hiding her left hand and noticed that it was wrapped up. Det. Thompson had the defendant transferred to the violent crimes office to be interviewed and photographed. Upon her arrival, the defendant waived her *Miranda* rights and was interviewed by Det. Thompson.[1]

Initially, the defendant told Det. Thompson she did not know what happened to Mr. Taylor. However, later, during the interrogation, she stated that she got into an argument and physical altercation with the victim while they were in their living room. According to the defendant, she armed herself with a knife because Mr. Taylor had threatened to hit her with a baseball bat. She claims that when she turned to go into the living room from the kitchen, the victim somehow walked into the knife. She then told the investigators that she had no intention of hurting Mr. Taylor and that stabbing him "was just a reflex." She also stated that after stabbing Mr. Taylor, she accidentally cut her hand with a knife when she placed her hand in the kitchen sink.

---

[1] Prior to the interview, Det. Thompson discovered that the defendant had a laceration on the top of her left hand. Before the interview began, Det. Thompson had the defendant's hand bandaged by medical personnel.

2

Following the stabbing, the defendant took her minor children with her to dispose of the murder weapon in the Mooretown neighborhood. She explained to the investigators that she disposed of the knife and pink towel in a nearby drainage ditch. After her confession, the defendant took officers to the drainage ditch, where they recovered two knives and a pink towel.

On December 17, 2020, the Caddo Parish Grand Jury indicted the defendant and charged her with second degree murder in violation of La. R.S. 14:30.1 and obstruction of justice in violation of La. R.S. 14:130.1. On February 3, 2021, the defendant entered a plea of not guilty after waiving formal arraignment. However, on May 19, 2021, the defendant withdrew her former pleas of not guilty and entered pleas of not guilty and not guilty by reason of insanity. That same day, the trial court appointed a sanity commission. A sanity report was prepared by Dr. Marc A. Colon, M.D. ("Dr. Colon") and Dr. John A. Person, M.D. ("Dr. Person"). Drs. Colon and Person filed their report on September 10, 2021, and found that the defendant was competent to stand trial. A second sanity report was prepared by Shelley R. Visconte, Ph.D. ("Dr. Visconte") and Lacey V. Moffatt, Psy.D. ("Dr. Moffatt"). Drs. Visconte and Moffatt found that the defendant had the "appropriate mental capacity at the time of the offense" and that her test results showed that she was "feigning symptoms of psychosis." They also opined that the defendant's behavior could not be attributed to battered-woman syndrome. Following the sanity hearing on March 3, 2022, the trial court found the defendant competent to proceed with trial.

Trial was held June 12-13, 2023, and the jury returned unanimous guilty verdicts on both counts. On June 22, 2023, a motion for a new trial and a motion for post-verdict judgment of acquittal were filed and denied

without a hearing. On July 6, 2023, the trial court sentenced the defendant to life imprisonment at hard labor without benefits for the second degree murder and 20 years at hard labor for obstruction of justice, to be served consecutively.[2] Following her sentence, the defendant made neither an oral request to reconsider sentence at the sentencing hearing nor did she file a written motion requesting same.

## DISCUSSION

In her sole assignment of error, the defendant argues that her consecutive sentences are unconstitutionally excessive and merely punitive. She further argues that her sentence is impossible to serve because it is "beyond her natural life." Thus, the defendant asks this Court to vacate the consecutive sentences and order that her sentences be served concurrently.

When a defendant fails to timely file a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare claim of constitutional excessiveness. *State v. Benson*, 53,578 (La. App. 2 Cir. 11/10/2020), 305 So. 3d 135. Because the defendant did not file a motion to reconsider, our review is limited to whether her sentences are constitutionally excessive. *See State v. Dickerson*, 55,088 (La. App. 2 Cir. 6/28/23), 367 So. 3d 958; *State v. Cooksey*, 53,660 (La. App. 2 Cir. 5/26/21), 316 So. 3d 1284, *writ denied*, 325 So. 3d 1074. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a needless infliction of pain and suffering. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly

_____

[2] The trial court did not order a PSI.

4

disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/07/23), 356 So. 3d 1053.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *reh'g denied*, 03-3514 (La. 02/25/05), 2005 La. LEXIS 566; *State v. Trotter, supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter, supra*; *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter, supra*; *State v. Bell, supra*.

When two or more convictions arise from the same act or transaction, or constitute part of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences are not mandatory; the trial court has the discretion to run the sentences consecutively. *Id.*; *State v. Minnieweather*, 52,124 (La. App. 2 Cir. 6/27/18), 251 So. 3d 583.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Boudreaux*, 41,660 (La. App. 2 Cir. 12/13/06), 945 So. 2d 898, *writ denied*, 07-0058 (La. 11/2/07), 966 So. 2d 591; *State v. Mitchell*, 37,916 (La. App. 2 Cir. 3/3/04), 869 So. 2d 276, *writ denied*, 04-0797 (La. 9/24/04), 882 So. 2d 1168, *cert. denied*, 543 U.S. 1068, 125 S. Ct. 905, 160 L. Ed. 2d 801 (2005). However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *Boudreaux*, *supra*; *State v. Hampton*, 38,017, 38,022 (La. App. 2 Cir. 1/28/04), 865 So. 2d 284, *writs denied*, 04-0834 (La. 3/11/05), 896 So. 2d 57, 04-2380 (La. 6/3/05), 903 So. 2d 452.

The defendant only contests the consecutive nature of her sentences; there was no objection or claim that her sentences themselves were excessive or illegal. Accordingly, we only consider in this appeal whether the requirement that the sentences be served consecutively was excessive and whether the sentences are illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice.

We reiterate that it is within the trial court's discretion to order the sentences to run consecutively rather than concurrently, and although the trial court did not state specific reasons for ordering consecutive sentences, the record provides an adequate factual basis for the trial court's ruling.

In this case, the defendant stabbed her live-in boyfriend in the heart and left him on the sofa to die and decompose. Instead of calling for help, the defendant took her minor children, who were in the home with her, to dispose of the murder weapon in a nearby drainage ditch. After returning home, the defendant acted as if nothing happened and went to bed. Mr.

Taylor's daughter, Shanequia, came home the following morning and discovered her father deceased on the sofa. At that point, rigor mortis had set in, and Mr. Taylor had been dead on the sofa for several hours. Instead of telling officers what actually occurred that night, the defendant told them that she did not know what happened to Mr. Taylor or who could have committed this crime. Only after the investigators informed her that they had reason to believe she was not being truthful did the defendant offer a self-serving confession about the events leading up to Mr. Taylor's death. Furthermore, prior to trial, the defendant pleaded not guilty by reason of insanity. However, the Sanity Commission reported that the defendant "attempted to feign psychiatric disturbance as it related to court proceedings."

The record provides more than ample support for the trial court's imposition of consecutive sentences. Additionally, the defendant's sentences do not shock the sense of justice and are not constitutionally excessive. Thus, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the defendant's convictions and sentences are **AFFIRMED**.

**HUNTER, J., concurring in part and dissenting in part.**

I concur in the decision to affirm defendant's convictions.

However, I dissent from the consecutive nature of the sentences imposed. These offenses arose out of a single course of conduct, and the sentences should have been ordered to be served concurrently. *See*, La. C. Cr. P. art. 883. I believe the two consecutive sentences – life without the benefit of probation, parole, or suspension of sentence, in addition to an additional sentence of 20 years at hard labor – serve no purpose other than to inflict pain and suffering and make no meaningful contribution to acceptable penal goals. Therefore, the sentences are constitutionally excessive.