STEWART, J.
hThe defendant, James Edward Burns, was convicted of violating La. R.S. 14:30.1, second degree murder. He was sentenced to life at hard labor without benefit of probation, parole, or suspension of sentence. The defendant now appeals, raising three assignments of error. For the reasons discussed below, the defendant’s conviction and sentence are affirmed.
FACTS
The evidence presented at James Burns’ trial for second degree murder, which took place between August 31, 2009 and September 4, 2009, established the following facts:
Daisy May testified that on September 29, 2007, while she was being dropped off by a friend on a corner of Fifth Street in Delhi, Louisiana, she saw James Burns and her aunt, Robertine May Burns. Daisy asked Robertine to take her home to pick up her check, and then take her to get the check cashed. Daisy got in the back seat of the car, since James was driving and Robertine was riding in the front passenger seat. James bypassed Daisy’s house, and started driving back toward Tallulah.
James began to turn in to the M & M Package Store, but left the parking lot immediately when he saw a police car parked there. He then drove down Cow Bayou Road and turned around in a driveway. After re-entering the road, he stopped the car at a nearby bridge and got out of the car, taking the keys with him. Robertine asked him what he was doing and reminded him they were supposed to be going to get Daisy’s check cashed. James Burns told her he believed she was only trying to get him to go to her sister’s house so she could “call the police on him *347 again.” Daisy testified |2that Robertine told James that “they hadn’t been having any problems all day, and that everything had been just fine.”
James suddenly pulled a knife from his back pants pocket, got back into the front seat of the car on his knees facing Rober-tine, and began stabbing her. Daisy exited the car and ran back to the driveway of the house where they had just turned around.
Shane Blake and his son Eric Blake were working on a lawnmower in Shane’s yard when Daisy came running up. They testified that the house was located well off the road. Shane had seen the car turn around in the driveway a few minutes earlier, but noted that it was not an unusual occurrence. Eric stated that he heard screaming and a horn blowing down by the road and mentioned it to his father. Shortly thereafter, they saw Daisy running up the driveway, screaming hysterically that her aunt was being stabbed. Daisy ran into the house and locked the door. Shane used his cell phone to call the police, then stood guard with his gun near the front of the house until the police arrived.
Madison Parish Sheriff’s Office Captain Jimmy Brooks and his partner Brian Cleveland were the two officers who had been at M & M Package Store when James, Robertine, and Daisy drove in and left immediately. They received a dispatch call indicating a 911 call had come in about a stabbing on Cow Bayou Road. They were only 1.1 miles from the scene of the incident, so they arrived there within two or three minutes of the 911 call. When they arrived, they saw a bloody knife and a pair of Rshoes in the road. They immediately called for backup and noted a blue Ford parked in tall grass off the road.
After the officers got out of their patrol car, they saw Robertine lying in the middle of the path the car had made, down an embankment in the weeds on the side of the road. She was still alive when they found her, but her right arm had almost been severed and she was bleeding heavily. They called an ambulance.
Detective Ed Atcheson and other law enforcement personnel arrived on the scene, and he and Officer Cleveland “cleared” the blue Ford that James Burns had been driving. It had been abandoned in tall grass, but the engine was still running. The officers noticed blood in the car. The path the car had taken from the roadway was clearly marked by damage to the surrounding landscape.
Since the scene was still not secure when the ambulance arrived, officers on the scene took a spine board from the ambulance, loaded Robertine’s body on it, put it on the trunk of a police unit and drove it up the embankment to the ambulance. At that time the EMT, James Marcus Todd, put her on a heart monitor and found no electrical conduction in the heart. Robertine was declared dead at the scene.
Officer Brooks testified that he heard a splash and a voice from the water of Cow Bayou. He, along with the other officers present, called for the person to come out, and James came from the water. Atche-son and Officer Neal Horath arrested James and took him into custody.
14Officer James Rash, a criminal investigator for the Madison Parish Sheriffs Office, was the investigator assigned to this crime. He testified that after signing a waiver of his rights, James gave a statement. Unfortunately, although the statement was videotaped on the night of the incident, the audio on the recorder was not working. Therefore, Officer Rash had to supply the court with a recital of what was said during the interview that night. Officer Rash testified that James claimed that *348 after he turned the car around in the driveway on Cow Bayou Road, Robertine pulled out a knife and started trying to stab him, so he struggled with her to take the knife away. He claimed that once he got the knife from her, she got out of the car. James stated he was afraid his wife had someone coming to get him, so he decided to pull the car into the grassy area to hide it, and then he ran and hid. Officer Rash asked James if he knew that he had run over his wife, and James replied that he did not.
The Madison Parish Coroner, Dr. Thomas Neumann, testified that Robertine’s injuries were consistent with her body having been dragged on the roadway under the car for some distance. He ordered an autopsy, which was performed by Dr. Steven Hayne. Dr. Hayne testified that he found three stab wounds in Robertine’s body as well as road grease and road rash on her. He defined road rash as linear abrasions that are consistent with a body having either been slid or dragged on a hard surface. He also testified that Ro-bertine died as a result of her arm being almost torn from her body, specifically stating as follows:
And in the axilla there’s one major artery, the brachial artery that takes origin from the subclavian which takes origin from | sthe aorta. It’s a large blood vessel carrying blood under high pressure. And when it is torn it will cause extensive bleeding in a rapid fashion. There are other arteries that were torn. There were other veins that were torn but the major blood vessel was the bra-chial artery in the axilla. And that would produce death in a relatively short period of time. And that was the lethal injury that Ms. Barnes [sic ] suffered.
The autopsy report states that the manner of death for Robertine May Burns was homicide. Dr. Hayne testified that Rober-tine did not die of. the stab wounds she received, which were non-lethal, but rather as a result of her right arm being almost severed from her body as she was dragged under the car, causing her to bleed to death. The autopsy report states the cause of death was “pedestrian motor vehicle crash,” and ruled “the underlying cause of death: the laceration of the major vessels of the right axilla.”
Madison Parish Sheriffs Detective Chad Heath Ezell testified that he examined the car that had been moved to Richmond Automotive. He photographed it inside and out. There was blood in the car, on the door, outside the door, and on the passenger side window, both inside and outside of the car. The front passenger side tire also had blood on the inner side.
Mr. Kendal Stracner, who performs DNA analysis at the North Louisiana Crime Lab in West Monroe, Louisiana, received evidence from the crime scene and also performed DNA tests on blood found on the vehicle, which had been delivered on a flatbed truck to his work site. He testified that the blood found in and outside the car matched Robertine’s DNA profile. The probability of finding the same DNA profile from a randomly selected individual other than Robertine was approximately one in 73.1 trillion. The blood found on the inner side of the passenger side front 10tire was tested for DNA and the DNA was found to be consistent with that of Robertine Burns.
Raymond Myers testified that the day before Robertine died, he was painting a house in Delhi at the same time James was doing carpentry work inside the house with another man, L.B. Reese. While the three men were taking a break, Myers heard James tell Reese that he was going to “kill the bitch.” James did not mention Robertine’s name, but the next day, Ro- *349 bertine was dead. Myers testified that he immediately told Robertine’s family what he had heard the day before.
The state asked the trial judge to make a determination of whether certain Prieur evidence could be introduced, and the trial judge allowed the evidence to be presented at trial. East Baton Rouge Sheriffs Deputy, Jason Broussard, East Baton Rouge Parish ADA, Sandra Ribes, and Rober-tine’s daughter, Crystal May, testified about an incident of domestic abuse by James Burns upon Robertine Burns in April of 2007, in Baton Rouge, and for which James Burns had been charged with domestic abuse and violation of a restraining order.
Deputy Broussard testified that on April 23, 2007, he received a call about a domestic abuse case regarding Robertine M. Burns. He went to her place of employment and spoke to her, and noticed that she had a swollen nose and lip. She told him that James had taken her daughter Crystal to school and had come back home and woken her up. He slapped her in the face and then began to punch her. He also told her he would kill her in that apartment. Deputy Broussard stated that Robertine had told him that after |7about two hours she was able to calm James down enough to allow her to go to work, where she called the sheriffs office to file the complaint.
Deputy Broussard went to see James Burns who stated that he had gotten into an argument with his wife, that she slapped him first, and that he slapped her back, and then she went to work. Deputy Broussard did not see any signs of injury on James Burns’ face or body. Deputy Broussard arrested him for domestic abuse battery.
Crystal May, Robertine’s daughter, testified that in April of 2007, she came home from school and saw her mother with a bandage made of gauze and tape on her nose.
ADA Sandra Ribes, from East Baton Rouge Parish, testified that Robertine’s case came to her attention on May 4, 2007. She stated that it was her usual procedure to contact the victim to get information, and that on that day, she talked to Rober-tine twice. The first time Robertine told Ms. Ribes that she wanted to pursue charges against James, but the second time she spoke to her, Robertine told her that she did not want to pursue charges because James’ mother was dying and he wanted to go up to North Louisiana. She believed he would leave her alone if he went to North Louisiana. Ms. Ribes asked her to put that in writing so she could put it in her case file, and Robertine did so. The statement indicates that Ro-bertine had a protective order which she believed would protect her from James. Ms. Ribes no-billed the case.
A month later Robertine contacted Ms. Ribes again and told her James had been harassing her and that she wanted Ms. Ribes to proceed | swith the charges in the domestic abuse incident and for violation of the protective order. She told Ms. Ribes that James had been calling her and threatening her by saying, “You thought this was the end, but it is not the end.” Ms. Ribes did file the charges against James on June 21, 2007, but in September 2007, the incident at issue in this case occurred and Robertine died.
The case went to the jury on September 4, 2009, and the jury found James Burns guilty of second degree murder. On September 22, 2009, James Burns was sentenced to serve life in prison at hard labor without benefit of probation, parole, or suspension of sentence. This appeal followed.
*350 LAW AND DISCUSSION

Sufficiency of the Evidence

The defendant asserts in his first assignment of error that the evidence adduced at trial was insufficient to convict him of second degree murder.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Eason, supra; State v. Wiltcher, 41,981 (La.App.2d Cir.8/30/02), 956 So.2d 769.
|1f)An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the conviction is based on circumstantial evidence, such evidence must exclude any reasonable hypothesis of innocence. La. R.S. 15:438. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417.
*351 La. R.S. 14:30.1, which defines the crime of second degree murder, provides in part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily-harm.
Therefore, in order to prove that the defendant, James Burns, committed the crime of second degree murder, the state had to prove that he |nhad the specific intent to kill, or to inflict great bodily harm upon Robertine May Burns.
The defendant presents two arguments that the evidence was insufficient to prove second degree murder. His first argument is based on the allegation that the only witness to any of the events that occurred, Daisy May, admitted to using crack cocaine the day of the incident. Further, he argues Daisy was sitting in the back seat of the car and was unable to observe all of Robertine’s actions.
The defendant states in his second argument that the stab wounds that were found on Robertine’s body were not the cause of her death, and in fact, Dr. Hayne, who performed the autopsy, indicated that the cause of death was due to having been run over and dragged under the car. He claims his statement to Investigator Rash was unequivocal that he did not realize he had run over his wife. The defendant asserts that the state failed to eliminate the hypothesis that he was unaware he had run over his wife.
The state argues the transcript of the trial is rife with proof that the defendant committed the crime of second degree murder when he killed his wife, Robertine May Burns. We agree. Daisy May witnessed the defendant pull a knife out of his pants pocket and stab Robertine several times. Daisy May testified that she saw the stabbing very well and did not have an obstructed view of the incident. The evidence presented at trial also indicates that at some point in time, Robertine escaped from the vehicle where she was being stabbed. This indication is supported by the blood evidence inside and outside the car. A careful review of the evidence in its | ^totality provides a clear indication that the defendant, who was the only person with the keys to the car, ran over Rober-tine and dragged her body down the road and down an embankment into the weeds. As a result, her arm was torn from her body and she bled to death.
The state presented evidence that Captain Jimmy Brooks from the Madison Parish Sheriffs Office and his partner, Brian Cleveland, responded to the 911 call within three minutes of the call being made. When they arrived to the scene of the incident, they discovered that the motor was running in the Burns’ car and that Robertine was severely injured, barely conscious, and lying in the pathway left by Burns’ vehicle. Shortly thereafter, the defendant was captured coming out of Cow Bayou.
The evidence presented by the state in this case was sufficient to prove Burns’ guilt beyond a reasonable doubt to a rational jury. The state was required to show that James Burns intended to kill or inflict great bodily harm upon Robertine May Burns, and the state met its burden of proof. The testimony of Daisy May indicated that Burns suddenly stopped the car, and for no apparent reason, pulled out a knife and began stabbing Robertine. Although Daisy left the scene and did not witness the rest of what transpired there on Cow Bayou Road, when the police arrived two to three minutes after the 911 call was made, they found Robertine dying in the weeds in the wake of the car James Burns had been driving. This evidence, *352 considered iñ the light most favorable to the prosecution, was sufficient to prove Burns’ guilt beyond a reasonable doubt. Therefore, this assignment of error has no merit.

11SChallenges for Cause

In the second assignment of error, the defendant contends that the trial court erred in denying challenges for cause as to five prospective jurors — David Lowery, Howard Carney, Brent Fortenberry, Johnny Goss, and Tilford Watts.
Challenges for cause are discussed in La. C. Cr. P. art. 797, which states:
The state or the defendant may challenge a juror for cause on the ground that:
(1) the juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. Ah opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offenses.
A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Holder, 44,386 (La.App. 2 Cir. 10/28/09), 25 So.3d 920.
114The law of challenge for cause indicates that it does not require a jury to be composed of individuals who are totally unacquainted with the defendant, the prosecuting witness, the prosecuting attorney and the witnesses who may testify at the trial, it requires only that jurors be fair and unbiased. In State v. Shelton, 377 So.2d 96 (La.1979), the court stated that in ruling on a challenge for cause, the trial judge has wide discretion, the exercise of which will not be disturbed on appeal except on a showing of an abuse thereof. That a prospective juror knows the defendant does not per se constitute a ground for challenge for cause. There must be a showing that the relationship would influence the juror’s ability to arrive at an impartial verdict. State v. Clark, 340 So.2d 208 (La.1976). A prospective juror’s statement that he will be fair and impartial is not binding on the trial court. If the revealed details of the relationship are such that bias or prejudice may be reasonably inferred, a juror may be properly refused for cause.
In State v. Gibson, 505 So.2d 237 (La.App. 3d Cir.1987), writ denied, 508 So.2d 66 (La.1987), the court stated a defendant can only complain about a trial court’s denial of a challenge for cause if the defendant has exhausted all his peremptory challenges. A prospective juror charged with bias can be rehabilitated if the court is satisfied that a juror can render an impartial verdict according to evidence and instructions given by the court. A relationship to law enforcement is not alone grounds for a challenge for cause. However, close scrutiny is required before a prospective juror who has been in law *353 enforcement is allowed on the jury. |lfiThe decision of whether a prospective juror has been rehabilitated rests with the court.
The defendant argues that during voir dire, counsel for the defense exhausted all peremptory challenges. There were six denied defense challenges for cause, and defendant argues that five of those six challenges for cause were erroneously denied as to David Lowery, Howard Carney, Brent Fortenberry, Johnny Goss, and Til-ford Watts.
Prospective juror David Lowery was challenged for cause because he was Detective Rash’s brother-in-law, and Lowery had stated that he would take Detective Rash’s word over that of other people. The record shows that Lowery was rehabilitated and stated he could be fair and would look at the evidence first to make a determination of guilt. The trial judge denied the challenge for cause of David Lowery, and indicated he had looked at case law and found several cases dealing with spouses, even wives of deputies, who were permitted to serve on juries, as well as one case in which the brother-in-law of the arresting deputy was allowed to serve.
Howard Carney was a farmer who had indicated it would be a hardship for him to serve on the jury because it was time for him to bring in his crops. Further, Carney was involved in a case with his son who was going through a divorce in Mississippi. The ease had “spilled over” into Madison Parish, and the defense claimed both ADA Edwin Moberley and defense counsel Leroy Smith were involved in the Louisiana proceeding, with Smith representing the opposing party in Mr. Carney’s son’s litigation. The defense claimed Mr. Carney was biased against defense counsel, and |i6his concern for his crop along with this bias should have been sufficient reason for the trial judge to have granted the defendant’s challenge for cause. The state argued that Carney had a grandson who could run the farm’s day-to-day operations, and that the suit involved his son, not the prospective juror. The trial judge found Carney had less of a hardship case than another farmer who was in the jury pool, and ultimately denied the challenge for cause.
Brent Fortenberry had a financial interest in a detention center. The defense argued that Fortenberry’s financial interest in keeping the detention center full and keeping sheriffs and law enforcement happy should result in the challenge for cause being granted. The trial judge noted that Fortenberry had a financial interest in the center but stated that he did not think “one defendant is gon’ make him or break him whether he’s in jail or out of jail,” and then he denied the challenge for cause.
Johnny Goss was challenged for cause by the defense because he stated he was a close friend of several of the law enforcement officers, and really good friends with Sammie Byrd who worked in the DA’s Office. Defense argued Goss could not be fair and impartial and might give his friends’ testimony weight, because of his close relationship with them. The trial judge determined that there was no indication that Goss was socially engaged with any of the people and that Goss had stated very strongly and firmly that he could be fair. Further, there was no indication that his knowing the deputies would cause him to be partial. Therefore, the trial court denied the challenge for cause.
117Tilford Watts was a teacher at a technical college and was also a constable for Madison Parish. The defense challenged him for cause on the basis of a hardship he had discussed concerning scheduling of his classes, and the fact that 20 students were going to be extremely inconvenienced by his absence. Further, the defense argued *354 that when questioned, Watts was “hesitant about law enforcement officers” and had also been the victim of several thefts. The trial judge found hardship did not support a challenge for cause. Further, the judge found the thefts did not seem to have any effect, and that Mr. Watts seemed sincere about his duty to serve. Therefore, the trial judge denied the challenge for cause.
Ultimately, all of these prospective jurors indicated that, despite their tenuous connections to various and sundry people involved in the case, they could render a fair and impartial verdict. Each of the five jurors was properly rehabilitated by counsel for the state or by the trial court. Because decisions on challenges for cause are within the wide discretion of the trial court, we find that the trial court did not abuse its discretion in the denial of these challenges for cause. Therefore, this assignment of error is without merit.

Prior Crimes Evidence

In the third and final assignment of error, the defendant alleges that the trial court erred in allowing the prior crimes and bad acts testimony presented by Jason Broussard, Crystal May and Sandra Ribes. The defendant argues that on the day jury selection began, August 31, 2009, the state filed its Prieur notice. See, State v. Prieur, 277 So.2d 126 (La.1973). The law requires that the state must provide the defendant with notice before trial that it intends to offer prior crimes evidence. Even when other crimes are relevant, the probative value of unrelated offenses must be weighed against their possible prejudicial effect.
On September 4, 2009, a hearing on the notice was held, outside the presence of the jury, regarding whether the testimony of Jason Broussard, deputy of the East Baton Rouge Sheriffs Office, Crystal May, daughter of Robertine May Burns, and Sandra Ribes, ADA of East Baton Rouge Parish, would be heard by the jury. Their testimony concerned an incident of domestic abuse that allegedly occurred in April of 2007, four months prior to Robertine’s death. The trial court heard the testimony of the three witnesses, held the testimony was not res gestae, but found that the evidence was admissible under Prieur.
The defendant argues that on the day before the Prieur hearing, he filed a pro se objection for the record indicating there were witnesses he had asked to be subpoenaed for his trial who were not subpoenaed by his counsel. The defendant argued that these witnesses who had not been subpoenaed would have rebutted the testimony of the three Prieur witnesses, and that his counsel was “totally incompetent” for his failure to call those witnesses. The defendant claimed there was no way his counsel could have known of the importance of these uncalled witnesses because the state failed to file its Prieur notice until the day the trial started. Therefore, the state’s failure to timely file the notice substantially prejudiced Mr. Burns and deprived him of his right and ability to adequately prepare for trial.
| inIn State v. Blank, 04-0204 (La.4/11/07), 955 So.2d 90, certiorari denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (10/29/07), the court cited the Prieur rule that evidence of other crimes, wrongs, or acts is generally inadmissible to impeach the character of the accused, citing La. C.E. art. 404(B)(1). When the other crimes are offered for a purpose allowed under Article 404, the state is required to prove “motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or ... (res gestae).” 955 So.2d at 123. The Blank court also stated that the state must provide the defendant with notice before trial that it intends to offer prior crimes *355 evidence, citing Prieur, 277 So.2d at 130. Even when other crimes are relevant, the probative value of unrelated offenses must be weighed against their possible prejudicial effect.
In Blank, the defendant claimed the state’s notice that it intended to introduce evidence of other crimes, filed approximately one month before trial and well beyond the court’s deadline for filing pretrial motions, was not timely, and should have been denied outright as untimely and inadequate. However, the Louisiana Supreme Court found that not every violation of pretrial procedures, including Prieur violations, requires reversal. The court stated that before a defendant can complain of such a violation, he must show prejudice. State v. Sanders, 93-0001, p. 14 (La.11/20/94), 648 So.2d 1272, 1284. Further, Prieur speaks of the “substantial risk of grave prejudice” to a defendant arising out of inadmissible or surprise admission of other crimes evidence, but does not presume that prejudice.
12riThe Louisiana Supreme Court found that notwithstanding the state’s failure to file its formal Prieur notice earlier, the defendant clearly knew that the state would introduce evidence of the other crimes at the penalty phase, given the court’s ruling which held the evidence admissible. The court noted the defense counsel did not object to the lack of notice at the Prieur hearing and despite the late hearing about admission of the evidence at the guilt phase, the defendant made no showing how his strategy would have been different had he received notice earlier. Because the defendant did not demonstrate prejudice resulting from the state’s untimely filing, he was deemed to show no basis for relief under the notice requirements of Prieur and Sanders. Therefore, the court found the defendant’s assignment of error did not warrant relief.
Similarly in this case, the state’s formal Prieur notice was rather untimely, having been filed on the day jury selection began. However, the record reveals that the state had provided defense counsel with evidence of other crimes committed in Baton Rouge, and the trial began at the end of August 2009. Further, although at the Prieur hearing, defense counsel brought up the issue that had he known earlier that the state intended to introduce the witnesses from East Baton Rouge he would have subpoenaed his own rebuttal witnesses to that testimony, he did not argue that he would have asserted any other defenses to the second degree murder charge, or would have changed his strategy, at trial.
The defendant failed to show prejudice, or the “substantial risk of grave prejudice” to him arising out of inadmissible or surprise admission of 1¾1 other crimes evidence required by Prieur. Therefore, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.