CARAWAY, J.
 

 11 Henry Moton was convicted of illegal use of weapons during a crime of violence, in violation of La. R.S. 14:94(F), and of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. After Moton admitted that he was a second felony habitual offender as to the illegal use of weapons charge, the court imposed consecutive sentences of 40 years’ hard labor without benefits for the illegal use of a weapon conviction and 10 years’ hard labor without benefits for the firearm charge. Moton appeals, urging four assignments of error. We affirm.
 

 
 *506
 

 Facts
 

 Sometime in the summer of 2008, Jeremy Rainey borrowed a .40 caliber handgun from an acquaintance he knew only as Marcus. Subsequently, Rainey’s grandmother’s car was broken into by a man who Rainey’s brother identified as Marcus. When Rainey learned of that incident, he refused to return the gun to Marcus.
 

 On July 20, 2008, Rainey and two of his friends were at the home of Rainey’s girlfriend, Jessica Chambers, on Clover Street in Shreveport when Marcus and Moton went to that house looking for Rainey. They were driving a white Mazda. Rainey told Chambers to tell the men he was not there. She did so, but Moton told her “if he didn’t get the gun, he was going to shoot the house up or something like that.” When Moton left, Rainey and his friends snuck out of the house.
 

 As Rainey walked and turned onto Dow-dell Street, he was cut off by a white car. Testimony indicated that Marcus was driving, and Moton was |2in the passenger seat. Rainey saw one of the doors open on the white car. Fearing trouble, Rainey pulled his .40 caliber handgun and fired it once and then turned and ran away. As he ran, Rainey heard multiple gunshots coming from the direction of the car, but he did not see if both men were shooting at him. Rainey escaped from the scene and was uninjured.
 

 Police responded to the scene and discovered that a young man who was just a bystander to the shooting had been struck and wounded by one of the rounds. The 16-year-old was later treated at the hospital and released.
 

 A search of the area revealed numerous groupings of spent shell casings on the ground. One group of approximately 13 spent .380 caliber shell casings was found near the corner of Clover and Dowdell. Police also found numerous .40 caliber shell casings. About one block to the north of the intersection near Summer Street, police recovered one spent 12-gauge shotgun shell.
 

 Police located a witness to the shooting, James Dennis, who lived on Summer Street. The witness saw a white car he described as a Toyota stopped in the street, and saw two men with guns firing south on Dowdell. One of the fired rounds put a hole in Dennis’ pickup truck and another hit his house. Dennis saw the driver firing a handgun and the passenger was firing a shotgun. After the shooting, Dennis heard one of the shooters say, “get the shells, the shotgun shells,” and then Dennis saw the driver stop and pick up various cartridge cases. Dennis could not identify either of the men he saw doing the shooting.
 

 Is A few days after the initial shooting, Rainey was walking down Clover Street near his girlfriend’s house when his girlfriend told him that “they [were] all down there on the corner of the street.” Rainey did not see Moton at that time, but when he went into his girlfriend’s yard and looked down the street, Rainey saw “Mo-ton creeping with the gun, walking out the yard.” Rainey described Moton’s gun only as a “big gun.”
 

 Rainey ran out of the yard and down Clover Street, and his pursuers began shooting at him. On this day, Rainey was sure that Moton was one of the men shooting at him and Chambers was also sure that Moton was among the group of assailants.
 

 Another witness, Aquila Robinson, testified that she was present at the second shooting. She overheard one of the assailants identify Rainey, and then she saw Moton cross the street with a gun going toward Rainey. Robinson then heard gunshots, but did not know who shot at whom.
 

 
 *507
 
 At trial in 2010, Robinson initially testified that she did not see the first shooting. However, in a recorded statement made to police shortly after the second shooting, she reported that she did see the first shooting, and that she saw Marcus and Moton firing down the street. Robinson did not know who shot first. She described Moton’s gun in the second shooting as a big gun “like a chopper” but recalled that he had a handgun in the first shooting. After the prosecutor played the recording of that interview to the jury, Robinson agreed that the recording had refreshed her memory of the events which had occurred two years before trial.
 

 14When Chambers and Robinson identified Moton in a photo lineup prepared by police, Moton was arrested in August 2008. While Moton was in jail, his phone calls were recorded.
 
 [1]
 
 A disc containing these phone calls was introduced into evidence, and the jury overheard portions of some of the several conversations on the disc. The record shows that the jury heard Moton explaining his situation to a woman. During this conversation, the woman asked him “where that gun at, though,” at which point Moton reminds her that he is in jail. In a conversation with his brother about the witnesses to the event and why they were getting involved, Moton says, “It ain’t nothing for me to get on that phone and call homey and (unintelligible) and have a n* * * *a’s ass f* * * * * over.”
 

 The jury convicted Moton on both charges. They voted unanimously on the possession of a firearm by a convicted felon charge and 10-2 on the illegal use of a weapon charge.
 

 After a subsequent adjudication as a second felony offender, Moton was sentenced. At the sentencing hearing, the court recited the sentence ranges for Mo-ton’s crimes and then, relying on the previously considered factors, imposed consecutive sentences of 40 years at hard labor, for illegal use of a weapon (the maximum sentence for a second-felony habitual offender), and 10 years at hard labor (the minimum sentence, without the required minimum fine) for possession of a firearm by a convicted felon. Moton filed a motion to reconsider the sentences, urging that the court should not have considered the evidence of Moton’s arrest for murder in the 1 ¿sentencing decision and should have imposed the sentences concurrently. When the district court denied that motion, Moton appealed.
 

 Discussion
 

 I.
 

 Moton argues that the state presented insufficient evidence to prove that he violated La. R.S. 14:94(F), illegal use of weapons while committing a crime of violence. He claims the state presented no evidence to prove that he had a gun during the encounter with Rainey on July 20, 2008.
 

 In 2008, La. R.S. 14:94(A) and (F) read as follows:
 

 A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
 

 ⅝ * * ⅜ ⅜ ⅜
 

 F. Whoever commits the crime of illegal use of weapons or dangerous instru-mentalities by discharging a firearm while committing, attempting to commit,
 
 *508
 
 conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence or violation of the Uniform Controlled Dangerous Substances Law, shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence. If the firearm used in violation of this Subsection is a machine gun or is equipped with a firearm silencer or muffler, as defined by R.S. 40:1751 and R.S. 40:1781, respectively, the offender shall be sentenced to imprisonment for not less than twenty years nor more than thirty years, without benefit of parole, probation, or suspension of sentence. Upon a second or subsequent conviction, under this Subsection, such offender shall be sentenced to imprisonment for not less than twenty years. If the violation of this Subsection, upon second or subsequent conviction, involves the use of a machine gun or a firearm equipped with a firearm silencer or muffler, such offender shall be sentenced to imprisonment for life without benefit of parole, probation, or suspension of sentence.
 

 Aggravated assault, aggravated battery and attempted second degree murder are listed as crimes of violence under La. R.S. 14:2.
 

 (¡When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra,
 
 443 U.S. at 319, 99 S.Ct. 2781;
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient
 
 *509
 
 support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35.
 

 In this case, we find the evidence sufficient to satisfy the elements of illegal use of weapons while committing a crime of violence. On the morning of the shooting, Moton searched for Rainey and threatened to shoot Chambers’ house where Rainey was located. According to several witnesses, including Rainey, Moton was the person who was a passenger of the white car in the moments before the shooting. James Dennis saw the shooting from inside his nearby house and witnessed both men in the car firing guns down the street. He identified the passenger as a person who was firing a shotgun. One spent shotgun shell was found to the north of the shooting scene, and Dennis overheard the passenger tell the driver to stop so |sthe shells could be removed from the scene. Additionally, Robinson’s report to the police revealed that she had personally seen Moton firing a weapon on July 20, 2008, the day of the first shooting.
 

 The testimony of the various witnesses identifying Moton as the passenger in the white car driven by “Marcus,” the eyewitness account of Dennis who saw the passenger firing a shotgun and Robinson’s eyewitness account of Moton firing a weapon is sufficient evidence to prove beyond a reasonable doubt that Moton was not only armed, but also actually fired a weapon at another person, an aggravated assault. The shooting of the firearm, while circumstantially shown to have been intended as an assault or to harm Rainey, did in fact cause bodily injury to an innocent bystander. This assignment of error is without merit.
 

 II.
 

 In his second assignment of error, Mo-ton argues that evidence was improperly admitted under La. C.E. art. 404(B). Mo-ton argues that because the bill of information charged him with only one count each of illegal use of a firearm and felon in possession of a firearm for an incident “on or about July 20, 2008,” the court improperly admitted, without a
 
 Prieur
 
 hearing, evidence of a second shooting or “other crimes” by Moton. The date of the second shooting was not clearly established at trial. Moton argues that this lack of notice of the state’s intended use of other crimes evidence entitles him to a new trial.
 

 Specifically, the bill of information in this case charged that “on or about July 20, 2008,” Moton “committed the offense of Illegal Use of a 19Weapon, While Committing a Crime of Violence, as set forth in R.S. 14:94(F)” and “the offense of Possession of a Firearm by a Convicted Felon as set forth in La. R.S. 14:95.1.” During police interviews of witnesses, some of them mentioned a second undated shooting incident that occurred between Moton and Rainey. Descriptions of the second shooting incident were contained in the documentation of police interviews with witnesses and provided to the defense in discovery. It is not apparent that police were dispatched to the second event. Nor did the state charge Moton with any offenses arising out of a second shooting. The cover page of the state’s response, filed in December 2008, stated in part that:
 

 The state intends to introduce at trial all items of evidence which are referred to in the attached reports.
 

 The state does not dispute that a traditional
 
 Prieur
 
 hearing was never held to determine the admissibility of this evidence pri- or to trial. Yet, defense counsel conceded at a pretrial hearing, that she knew about the event through discovery.
 

 
 *510
 
 Immediately prior to trial, the trial court conducted the defendant’s motion
 
 in li-mine
 
 to address Moton’s argument that the testimony of the witnesses should be limited to the events of July 20. The state argued that the dispute between Moton and Rainey was ongoing. The court accepted this explanation and allowed admission of the evidence.
 

 In
 
 State v. Rose,
 
 06-0402 (La.2/22/07), 949 So.2d 1236, 1243, the supreme court explained:
 

 It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404(B)(1);
 
 State v. Williams,
 
 96-1023, p. 30 (La.1/21/98), 708 So.2d 703, 725;
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La.1973). Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the “substantial risk of grave prejudice to the defendant.”
 
 Prieur,
 
 277 So.2d at 128. However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). The State must provide the defendant -with notice and a hearing before trial if it intends to offer such evidence.
 
 Prieur,
 
 277 So.2d at 130. Even when the other crimes evidence is offered for a purpose allowed under art. 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant’s defense.
 
 State v. Martin,
 
 377 So.2d 259, 268 (La.1979);
 
 Prieur,
 
 277 So.2d at 130. The State also bears the burden of proving that defendant committed the other crimes, wrongs or acts.
 
 State v. Galliano,
 
 2002-2849, p. 2, (La.1/10/03), 839 So.2d 932, 933 (per curiam).
 

 Although a defendant’s prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree.
 
 State v. Germain,
 
 433 So.2d 110, 118 (La.1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.
 
 Id.; see also, Old Chief v. United States,
 
 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (“The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.”) (Footnote omitted).
 

 InArticle 404(B) specifically provides that “the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial,” which reflects the
 
 Prieur
 
 ruling. However, not every violation of pretrial procedures, including
 
 Prieur
 
 violations, requires reversal of a conviction. Before a defendant can complain of such a violation, he must show prejudice.
 
 Prieur
 
 speaks of the “substantial risk of grave prejudice” to a defendant arising out of inadmissible or surprise admission of other crimes evidence, but does not presume that prejudice.
 
 State v. Blank,
 
 04-0204 (La.4/11/07), 955 So.2d 90,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007);
 
 State v. Sanders,
 
 93-0001 (La.11/30/94), 648 So.2d 1272,
 
 cert.
 
 denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996);
 
 State v. Burns,
 
 45,539
 
 *511
 
 (La.App.2d Cir.9/22/10), 48 So.3d 344,
 
 writ denied,
 
 10-2449 (La.3/4/11), 58 So.3d 473.
 

 The erroneous admission of other crimes evidence due to the state’s failure to give the defense proper notice, or for any other reason, is subject to the harmless error rule because the erroneous introduction of other crimes evidence is a trial error, i.e., an error which occurs during the case’s presentation to the trier of fact, which may be quantitatively assessed in the context of the other evidence.
 
 State v. Johnson,
 
 94-1379, (La.11/27/95), 664 So.2d 94, 102. An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error.
 
 State v. Robertson,
 
 06-1537 (La.1/16/08), 988 So.2d 166, 172.
 

 | ipThe issue of Moton’s identity as the shooter and, indeed, his possession and use of a gun at the first incident were contested by him at trial. Thus, under La. C.E. art. 404(B), evidence of the second incident had independent relevance to the July 20, 2008 event to prove Moton’s identity, use of a firearm and intent to shoot the victim.
 

 Moreover, it is undisputed that Mo-ton was made well aware long before trial that the state was in possession of this evidence against him and, as a part of the general statement in the discovery response, intended to use this and other evidence insofar as it was admissible. Thus, although no formal
 
 Prieur
 
 hearing occurred, the record reflects that the court actually did hear and consider Moton’s argument — via the motion
 
 in limine
 
 — on this point prior to the commencement of trial. Such pretrial notice by the state and the defendant’s awareness of the prior conduct has been held to be sufficient particular notice of the admission of other crimes evidence to allow for adequate preparation of a defense.
 
 State v. Sanders, supra.
 
 Thus, Moton was not prejudiced by the technical notice violation. Additionally, we find that the probative value of the evidence outweighed any danger of unfair prejudice. Thus, we conclude that this assignment of error is without merit.
 

 III.
 

 In his third assignment of error, Moton argues that because he did not affirmatively plead self-defense, the trial court erred in assenting to the prosecutor’s request to include a jury charge explaining the so-called “aggressor doctrine,” La. R.S. 14:21. He argues that the charge was not | [3pertinent to the evidence and that it served only to mislead and confuse the jury. La. C. Cr. P. art. 807.
 

 At the conclusion of the evidence and after both sides rested, the defendant objected to the inclusion of the aggressor doctrine in the jury charge, urging that there had been no testimony about self-defense. The state argued that because Rainey had admitted that he shot first at the defendant, and that “people’s notions of self defense are so ingrained,” the aggressor doctrine instruction was warranted. The court agreed with the state, finding that this could be an issue and that the instruction was proper. The jury instruction on this point consisted solely of the reading of La. R.S. 14:21 as follows:
 

 A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows of or should know that he desires to withdraw and discontinue the conflict.
 

 The facts in this case demonstrate the need for an instruction to the jury on the aggressor doctrine because one of the principal witnesses and Moton’s intended victim admitted that he drew his own handgun and fired it without seeing Moton
 
 *512
 
 in possession of a firearm. Thus, the jury understood that the victim shot first on July 20, 2008. Not only did the instruction help explain to the jury this important facet of the law, but it benefitted Moton because it allowed for the jury to consider whether Moton’s actions were justified. Thus, Moton can complain of no prejudice by the inclusion of the charge to the jury.
 

 _h_4lV.
 

 In his final assignment of error, Moton argues that the combined 50-year sentence is too harsh, that the sentences should not have been imposed consecutively, and that the trial court should not have based his sentence in part upon a prior homicide charge against defendant which was dismissed.
 

 For the illegal use of a weapon during a crime of violence conviction, Moton faced a possible 20-year maximum sentence without benefit of parole, probation or suspension of sentence. La. R.S. 14:94(F). Because, however, he was adjudicated a second felony habitual offender under La. R.S. 15:529.1, Moton faced maximum sentencing exposure of 40 years. Thus, for the offense of illegal use of a weapon during a crime of violence, Moton received the maximum sentence. For the possession of a firearm by a convicted felon conviction, Moton faced a sentence of not less than 10 nor more than 20 years, without benefit of parole, probation or suspension of sentence. For that conviction, Mo-ton received the minimum sentence.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or 1^mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267,
 
 writ denied,
 
 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259,
 
 writ denied,
 
 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 07-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Rob
 
 
 *513
 

 inson,
 
 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
 

 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory.
 
 State v. Derry,
 
 516 So.2d 1284 (La.App. 2d Cir.1987),
 
 writ denied,
 
 521 So.2d 1168 (La.1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Johnson,
 
 42,323 (La.App.2d Cir.8/15/07), 962 So.2d 1126.
 

 A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.
 
 State v. Johnson, supra; State v. Boudreaux,
 
 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898,
 
 writ denied,
 
 07-0058 (La.11/2/07), 966 So.2d 591;
 
 State v. Mitchell,
 
 37,916 (La.App.2d Cir.3/3/04), 869 So.2d 276,
 
 writ denied,
 
 04-0797 (La.9/24/04), 882 So.2d 1168,
 
 cert. denied,
 
 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005).
 

 Among the factors to be considered are the defendant’s criminal history,
 
 State v. Ortego,
 
 382 So.2d 921 (La.1980),
 
 cert. denied,
 
 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980);
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense,
 
 State v. Adams,
 
 493 So.2d 835 (La.App. 2d Cir.1986),
 
 writ denied,
 
 496 So.2d 355 (La.1986); the viciousness of the crimes,
 
 State v. Clark,
 
 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims,
 
 State v. Lewis,
 
 430 So.2d 1286 (La.App. 1st Cir.1983), wr
 
 it denied,
 
 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public,
 
 State v. Jett,
 
 419 So.2d 844 (La.1982); the potential for defendant’s rehabilitation,
 
 State v. Sherer,
 
 437 So.2d 276 (La.1983);
 
 State v. Lighten,
 
 516 So.2d 1266 (La.App. 2d Cir.1987); and whether defendant has received a benefit from a plea bargain,
 
 State v. Jett, supra; State v. Adams, supra.
 

 The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See
 
 State v. Boudreaux, supra.
 

 In the absence of allegations of mistake or falsehood, evidence of uncharged offenses is admissible and is a valid factor for consideration in sentencing.
 
 State v. Emerson,
 
 31,408 (La.App.2d Cir.12/9/98), 722 So.2d 373,
 
 writ denied,
 
 99-1518 (La.10/15/99), 748 So.2d 470;
 
 State v. Armstrong,
 
 557 So.2d 1160 (La.App. 2d Cir.1990),
 
 writ denied,
 
 564 So.2d 320 (La.1990);
 
 State v. Smith,
 
 431 So.2d 838 (La.App. 2d Cir.1983),
 
 writ denied,
 
 435 So.2d 463 (La.1983). The sources of information upon which a trial court may rely at sentencing are varied and may include evidence usually excluded from the courtroom at trial, including hearsay and arrest and conviction records.
 
 State v. Cozzetto,
 
 07-2031 (La.2/15/08), 974 So.2d 665. Because the scope of information available to the | issentencing court is so broad, a defendant has the due process right to rebut prejudi-cially false or misleading information that could adversely affect his sentence.
 
 State v. Myles,
 
 94-0217 (La.6/3/94), 638 So.2d 218;
 
 State v. Monk,
 
 42,067 (La.App.2d Cir.5/2/07), 956 So.2d 185.
 

 
 *514
 
 Prior to sentencing, the state filed a sentencing recommendation with the court. That document recited the facts of this offense and included other peripheral information not presented to the jury. According to the memo, Moton had told the police that he had learned to collect his fired cartridge cases from the crime scene from a fellow gang member when Moton was in the Crip Street gang “during another of his shootouts at the Peach Street Apartments in 1995.”
 

 Further, Motoris criminal history was reported as follows:
 

 • October 1997 — Illegal Carrying of Weapons;
 

 • October 1997 — Resisting an Officer;
 

 • October 1997 — Simple criminal damage to property;
 

 • December 1997 — Simple battery, dismissed per La. C. Cr. P. art. 894;
 

 • March 1998 — Possession of Schedule I narcotics;
 

 • March 1998 — Possession of Schedule I narcotics, coupled with an arrest for simple robbery and illegal carrying of weapons;
 

 • Undated — Simple Battery;
 

 • September 1999 — Distribution of Schedule II Narcotics; Motoris only felony conviction;
 

 • May 2002 — arrested for First Degree Murder; charge later dismissed;
 

 • January 2006 — Flight from an Officer;
 

 • January 2006 — Criminal Mischief;
 

 • September 2006 — Simple Battery;
 

 • July 2007 — Simple Battery;
 

 • November 2007 — Resisting an Officer; Interference with an Officer.
 

 119The state reminded the court that Mo-ton, while in jail, had “motivated his brother to coerce witnesses regarding his criminal case,” a reference to the evidence of his jailhouse telephone threats introduced at trial. Also, according to the memo, Moton apparently told police that “his highly successful and prolific drug business was a major factor in his involvement in this offense.”
 

 Included in this lengthy discussion by the state was a recitation of the facts surrounding Motoris arrest for first degree murder in 2002, related to a shocking offense involving the kidnaping, robbery, torture and murder of a military service member. According to the state:
 

 Moton was identified in separate interviews by co-defendants as a principal to the whole crime and specifically as the one who fatally shot [the victim]. Moton escaped justice because witnesses to the crime were not willing to come forward against him for fear of retribution.
 

 A co-defendant was allowed to plead guilty to manslaughter.
 
 State v. Jones,
 
 43,115 (La.App.2d Cir.3/19/08), 978 So.2d 1236.
 

 In addition, the state filed an habitual offender bill of information which alleged that Moton was a second felony habitual offender for enhancement of the sentence for his conviction for illegal use of a weapon. The bill relied on Moton’s 1999 drug conviction and the resulting five-year hard labor sentence. According to the minutes, Moton admitted his status as a second felony offender at a hearing on August 18, 2010.
 

 Moton appeared for sentencing on September 2, 2010. No presentence investigation was offered. Motoris counsel made a long detailed argument in favor of leniency for Moton and in opposition to thej^memo filed by the state. Counsel argued that at least some of Motoris criminal history as recited by the state amounted to only arrests, not convictions. Further, counsel argued that the trial court should impose the sentences concurrently, not consecu
 
 *515
 
 tively, because both of Moton’s instant convictions arose from a single incident.
 

 The trial judge then explained to the defendant the factors under La. C. Cr. P. art. 894.1 which it considered important in imposing sentence. First among these factors was the aggravating factor that the defendant had at least 16 prior arrests, many of which were for serious offenses. Further, the court detailed the remainder of and found applicable nearly all of the other aggravating factors in La. C. Cr. P. art. 894.1.
 

 The evidence adduced at trial proved that Moton was a singularly dangerous individual who was extraordinarily likely to commit further crimes if more lenient sentences were imposed. He first threatened the use of firearms at Chambers’ residence. Moton then armed himself with a shotgun and, along with another man armed with a firearm, went “hunting” for Rainey, whom the defendant believed had wronged his friend. Moton and his accomplice drove repeatedly around the neighborhood looking for Rainey.
 

 Next, Moton and his accomplice ambushed Rainey on the street and unleashed a barrage of gunfire that perforated various houses and cars in the neighborhood and struck an innocent child, seriously wounding him. Only by happenstance and poor marksmanship was further injury to others avoided. While Moton and his companion were trying to hit Rainey with 121 their shots, the shots were fired without regard to the other inhabitants of the neighborhood.
 

 The quantity of gunfire, the wholly illegal motive, the employment of an accomplice who also participated in the gunfire, and the serious injury actually inflicted by the volume of gunfire to an innocent bystander make this the worst of violations for the two crimes in question. Hence, well-above average sentences were justified even prior to reference to the other factors in La. C. Cr. P. art. 894.1.
 

 When those factors are considered, the maximum sentence for illegal use of weapons was justified. Moton was familiar with the criminal justice system; he had over a dozen prior arrests, many of which involved the use of force or violence upon others. Moton admitted to police that he was a drug dealer. The record reveals essentially no mitigating factors. Finally, the record includes a phone call from Moton to his brother where the men were discussing the witnesses to the crime and Moton chillingly made threatening comments suggesting that witnesses be harmed to prevent them from testifying.
 

 The defendant’s behavior and criminal history demonstrate that he is exceptionally likely to commit other crimes if more lenient sentences were imposed. Evidence of his arrest and involvement in the shocking kidnaping/torture/murder supports the consecutive sentences imposed, and the trial court was entitled to rely in part upon that evidence as a justification for the sentence.
 
 State v. Cozzetto, supra.
 
 There was no allegation that the information was materially false, and the state points out 122that the failure of the prosecution in that case was attributable to the defendant’s intimidation of witnesses, which propensity has been proven by incontrovertible evidence in this case. All of this evidence served as ample justification for the consecutive imposition of the defendant’s sentences. The assignment of error is without merit.
 
 [2]
 

 
 *516
 

 Decree
 

 For the foregoing reasons, we affirm Moton’s convictions and sentences.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . At the beginning of each call, an automated system notified the parties that the calls are subject to monitoring and recording.
 

 [2]
 

 . We note one error patent on the face of the record. The trial court imposed no fine although La. R.S. 14:95.1(B) requires the imposition of at least a $1,000 fine upon conviction. However, because Moton is apparently indigent, this Court does not correct this error
 
 *516
 
 under such circumstances. See
 
 State v. Culp,
 
 44,270 (La.App.2d Cir.7/15/09), 17 So.3d 429.