STONE, J.
The defendant, James Stewart, was charged with aggravated flight from an officer, in violation of La. R.S. 14:108.1. Following a jury trial, Stewart was found guilty as charged and sentenced to serve five years at hard labor. Stewart now appeals his conviction and sentence, alleging the evidence was insufficient to support a conviction and his sentence is excessive. For the following reasons, we affirm the conviction and sentence.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
James Stewart ("Stewart") was arrested on May 16, 2016 and charged with aggravated flight from an officer in violation of La. R.S. 14:108.1. After a trial by jury, Stewart was found guilty as charged by a 10-2 vote. The trial court sentenced Stewart to the statutory maximum penalty of five years at hard labor.[1]
Stewart's appointed counsel filed a motion to reconsider sentence claiming the evidence was insufficient to justify imposing the maximum sentence. The trial court denied the motion. Thereafter, Stewart filed a pro se motion to reconsider sentence, which the trial court also denied. Stewart now appeals.
DISCUSSION
Sufficiency of Evidence
On appeal, Stewart does not dispute that he was guilty of flight from an officer or the issue of identity, but instead focuses on the evidence to support the aggravated aspect of the charged offense. Stewart argues the state failed to prove beyond a reasonable doubt that a minimum of two of the aggravating factors listed in La. R.S. 14:108.1(D) applied to his case.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational *292 trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied , 09-0725 (La. 12/11/09), 23 So.3d 913, cert. denied , 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010) ; State v. Hill , 42,025 (La. App. 2 Cir. 05/09/07), 956 So.2d 758, writ denied , 07-1209 (La. 12/14/07), 970 So.2d 529.
Direct evidence provides proof of the existence of a fact such as a witness's testimony that he saw or heard something. State v. Lilly , 468 So.2d 1154 (La. 1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438 ; Lilly, supra ; State v. Robinson , 47,437 (La. App. 2 Cir. 11/14/12), 106 So.3d 1028, writ denied , 12-2658 (La. 05/17/13), 117 So.3d 918. The trier of fact is charged with weighing the credibility of this evidence and on review, the Jackson standard is applied, giving great deference to the fact finder's conclusions. State v. Hill , 47,568 (La. App. 2 Cir. 09/26/12), 106 So.3d 617.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Glover , 47,311 (La. App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied , 12-2667 (La. 05/24/13), 116 So.3d 659 ; State v. Speed , 43,786 (La. App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/06/09), 21 So.3d 299. The trier of fact is charged to make credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey , 99-0023 (La. 01/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Woodard , 47,286 (La. App. 2 Cir. 10/03/12), 107 So.3d 70, writ denied , 12-2371 (La. 04/26/13), 112 So.3d 837.
La. R.S. 14:108.1 provides, in pertinent part, the following regarding aggravated flight from an officer:
A. No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given *293 a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
* * * *
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle or watercraft.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.
(5) Fails to obey a stop sign or a yield sign.
(6) Fails to obey a traffic control signal device.
During jury trial, the state presented testimony from one witness, Officer Derek Snyder of the Shreveport Police Department. Officer Snyder testified that on May 2, 2016, at around 12:40 a.m., he was patrolling Pines Road in a marked Shreveport Police vehicle when he pulled up behind a red Toyota Corolla at a traffic light. The license plate, though visible, was difficult to read. Officer Snyder decided to check the validity of the license plate using his computer system. A check of the plate revealed it was registered to a Buick Century, and the plate had previously been cancelled. Officer Snyder initiated a traffic stop by activating his lights and siren. The driver of the Toyota proceeded through the traffic light and turned right onto a residential street. The driver pulled into a driveway and appeared to be stopping. However, the driver instead reversed out of the driveway and drove forward into the front yard to get around Officer Snyder's police unit. As the driver was pulling around Officer Snyder's unit, Officer Snyder opened his door and gave the driver a verbal directive to stop. Officer Snyder recalled clearly seeing Stewart driving the Toyota.
Officer Snyder testified Stewart ignored his command to stop the Toyota, sped down the residential street, and turned south onto Pines Road. Officer Snyder pursued the fleeing Toyota. He stated the posted speed limit in that area was 45 mph, and he had to travel 90 mph to catch up with the vehicle. Officer Snyder testified he chased the Toyota along Pines Road, over a railroad track, and through a four-way stop sign where Pines Road intersects with Flournoy-Lucas Road. He further testified the Toyota briefly crossed over the double-yellow line on the road and into the opposite lane of traffic. According to Officer Snyder, Stewart eventually lost control of the vehicle in a curve. The Toyota again crossed the yellow line into the other lane of traffic and came to a stop in the grass on the opposite side of the road. Stewart and the passenger, Michael Traylor ("Traylor"), fled the scene on foot. Officer Snyder was able to capture Traylor, but Stewart disappeared into the woods.
Officer Snyder testified that after he arrested Traylor, he conducted a search of the Toyota. Inside the Toyota, he found a picture ID bearing a photo resembling the person Officer Snyder saw driving the Toyota, the name "James Stewart," and an address of 3415 Fulton Street. Officer Snyder attempted to locate Stewart at the Fulton address but was unsuccessful. An arrest warrant was prepared for Stewart, *294 and he was later apprehended. In open court, Officer Snyder identified Stewart as the same person driving the Toyota as well as the person pictured on the ID found inside the Toyota.
Officer Snyder testified Stewart committed the following violations: switched license plates; traveled at a high rate of speed in a residential area with no regard for life or property; ran a four-way stop sign; and crossed the double-yellow line of a divided roadway into the other lane of traffic. Officer Snyder also stated that during the pursuit there were no collisions, injuries, or damage to property, and no vehicles were forced off the road.
In its oral reasons for sentencing, the trial court considered the factors outlined in La. C. Cr. P. art. 894.1. The trial court found an undue risk that Stewart would commit another crime if sentenced to probation or a suspended sentence. Additionally, the trial court determined Stewart was in need of correctional treatment by commitment to an institution, and any lesser sentence would deprecate the seriousness of the offense.
As aggravating factors, the trial court noted Stewart's prior conviction for the same offense in which Stewart received only a one-year suspended sentence with one year of supervised probation. The trial court commented that Stewart apparently learned nothing from the "gift" of probation in which he received. Additionally, the trial court observed that in committing the current offense, Stewart knowingly created a risk of death or great bodily harm to more than one person, namely, Traylor, Officer Snyder, and himself. The trial court found that Stewart's actions and repeated offenses demonstrated he had no respect for police or law enforcement. Finally, the trial court determined no mitigating factors applied in this case.
Stewart insists the more serious aggravated offense is not warranted because he did not injure anyone, did not collide with any other vehicles or force any vehicles off the road, and did not cause any property damage. However, this Court has previously explained that the factors required to establish human life was endangered, in support of an aggravated flight from an officer conviction, are not based upon actual personal injuries, property damage, or vehicle collisions. Rather, the factors focus on the harm the offender creates toward the public and the law enforcement officer attempting to make the stop.
In State v. Gilbert , 49,039 (La. App. 2 Cir. 04/09/14), 136 So.3d 995, this Court found the evidence sufficient to support a conviction for aggravated flight from an officer where the defendant drove at speeds exceeding 80 mph and ran a red traffic light in order to evade an outstanding arrest warrant for resisting an officer and misrepresentation during booking. The vehicle the defendant was driving was stolen and contained a stolen handgun and a small amount of marijuana. While there were no other vehicle collisions, personal injuries, or property damage, this Court noted the defendant endangered the lives of his passengers, the pursuing officers, and the citizens.
Likewise, in State v. Scroggins , 49,194 (La. App. 2 Cir. 08/13/14), 147 So.3d 276, this Court upheld the defendant's conviction for aggravated flight from an officer, even though the defendant did not cause any collisions, personal injuries, or property damage, where the defendant placed the public and the pursuing police officer in harm's way by recklessly driving 66-99 mph in a 45 mph zone, crossing the median in a no passing zone, and running a traffic light.
In the matter sub judice , Stewart recklessly drove his vehicle at high speeds *295 through a densely-populated area, over a railroad track, and through a four-way stop sign. The posted speed limit was 45 mph, and Officer Snyder testified he had to drive at least 90 mph just to keep up with Stewart. The audio and video recording of the event recorded on Officer Snyder's police unit was admitted into evidence and played for the jury. In the video, Stewart's face is clearly visible as he ignores Officer Snyder's verbal command to stop and continues driving. As Officer Snyder immediately pursues Stewart back onto Pines Road, the red Toyota is visible at quite a distance, corroborating Officer Snyder's testimony that Stewart was traveling at a high rate of speed in the 45 mph zone. The video shows that, despite Officer Snyder traveling at 90 mph, Stewart maintained a comfortable distance ahead of the officer. Stewart undoubtedly could not have maintained that distance had he slowed down at the railroad tracks or come to a complete stop at the four-way stop sign. The evidence was sufficient to prove Stewart committed the following aggravated circumstances: 1) traveled in excess of 25 mph over the speed limit in violation of La. R.S. 14:108.1(D)(3) ; 2) failed to obey a stop sign in violation of La. R.S. 14:108.1(D)(5) ; 3) crossed the median in a no-passing zone, into the opposite lane of traffic, in order to pass another vehicle driving South on Pines Road, in violation of La. R.S. 14:108.1(D)(4) ; and 4) lost control of the vehicle in a turn, which resulted in him driving off the roadway, in violation of La. R.S. 14:108.1(D)(1).
In viewing the totality of the evidence in a light most favorable to the prosecution, we opine that any rational trier of fact could have found the essential elements of aggravated flight from an officer proven beyond a reasonable doubt.
Constitutionally Excessive Sentence
Stewart argues the five-year maximum sentence is constitutionally excessive in light of the facts of his case. Though Stewart acknowledges he has prior felony convictions, including one for aggravated flight from an officer, he asserts the offenses are all minor. He insists that he is not the worst offender and his conduct did not constitute the worst offense.
The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy , 39,233 (La. App. 2 Cir. 01/26/05), 892 So.2d 710 ; State v. Young , 46,575 (La. App. 2 Cir. 09/21/11), 73 So.3d 473, writ denied , 11-2304 (La. 03/09/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler , 42,661 (La. App. 2 Cir. 10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque , 46,515 (La. App. 2 Cir. 09/21/11), 73 So.3d 1021, writ denied , 11-2347 (La. 03/09/12), 84 So.3d 551.
Where the defendant's motion to reconsider sentence alleges mere excessiveness of sentence, on appeal, the reviewing court is limited to considering whether the sentence is constitutionally excessive. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Boyd , 46,321 (La. App. 2d Cir. 09/21/11), 72 So.3d 952. A sentence can be constitutionally excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that when viewed in light of the harm done to society, it shocks the sense of justice or, it serves no purpose other than to needlessly *296 inflict pain and suffering. State v. Fatheree , 46,686 (La. App. 2 Cir. 11/02/11), 77 So.3d 1047 ; State v. Lobato , 603 So.2d 739 (La. 1992) ; State v. Livingston, 39,390 (La. App. 2 Cir. 04/06/05), 899 So.2d 733 ; State v. White , 37,815 (La. App. 2 Cir. 12/17/03), 862 So.2d 1123.
The defendant's personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton , 46,607 (La. App. 2 Cir. 09/21/11), 73 So.3d 503, writ denied , 11-2288 (La. 03/30/12), 85 So.3d 113 ; State v. Caldwell , 46,645 (La. App. 2 Cir. 09/21/11), 74 So.3d 248, writ denied , 11-2348 (La. 04/27/12), 86 So.3d 625. Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor , 41,898 (La. App. 2 Cir. 04/04/07), 954 So.2d 804.
La. R.S. 14:108.1(E)(1) provides that the penalty for committing aggravated flight from an officer shall be imprisonment at hard labor for not more than five years and an optional fine of no more than $2,000.
Under the circumstances of this case, we find no showing that the trial court abused its discretion in imposing the five-year maximum sentence. The sentence was within the statutory guidelines and the trial court articulated detailed reasons supporting the imposed sentence. Stewart had three prior convictions, including one for the same offense, and was granted the benefit of a suspended sentence and probation in each. As the trial court noted, despite the trial court's prior leniency in sentencing in those matters, Stewart continues to disregard law enforcement and place human lives in mortal danger. Furthermore, Stewart did not show any remorse or take responsibility for his crime and continued to downgrade the nature of his prior criminal activity as minor. Despite the absence of injury and damage, Stewart's actions presented undue risk of harm to human life including his own, Officer Snyder's, Traylor's, and any other driver present on the road that night. Accordingly, the imposed sentence is not grossly disproportionate to the severity of the danger caused by Stewart's actions, does not shock the sense of justice, and is not constitutionally excessive.
CONCLUSION
For the foregoing reasons, Stewart's conviction and sentence are affirmed.
AFFIRMED.

Stewart was also ordered to pay $250 to the indigent defender's office and all court costs.